**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NANCY MAESHIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>YATSEN HOLDING LIMITED, JINFENG HUANG, YUWEN CHEN, JIANHUA LYU, DONGHAO YANG, SIDNEY XUANDE HUANG, BONNIE YI ZHANG, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., HILLHOUSE CAPITAL, GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, FUTU INC., and TIGER BROKERS (NZ) LIMITED,<br><br>                    Defendants. | Case No.<br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT FOR**
**VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

# INTRODUCTION

1.      Plaintiff Nancy Maeshiro ("Plaintiff") brings this class action for violations of the federal securities laws.

2.      Plaintiff brings this federal securities class action under §§10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased Yatsen Holding Limited ("Yatsen" or the "Company") American Depository Shares ("ADS") between November 19, 2020 and March 10, 2022, inclusive (the "Class Period"), and who were damaged thereby (the "Exchange Act Class").  The Exchange Act claims are brought against Defendants Yatsen, Jinfeng Huang ("Huang"), Donghao Yang ("Yang") and Hillhouse Capital ("Hillhouse"), Yatsen's largest (and controlling) external shareholder ("Hillhouse") (collectively, the "Exchange Act Defendants").

3.      Plaintiff also brings this federal class action under §§11 and 15 of the Securities Act of 1933 ("Securities Act") on behalf of all persons or entities that purchased or acquired Yatsen ADS pursuant or traceable to the Company's Registration Statement on Form F-1 (including all amendments made thereto) and related prospectus on Form 424B4 (collectively, the "Offering Documents") issued in connection with Yatsen's November 2020 initial public stock offering (the "IPO" or the "Offering") (the "Securities Act Class" and together with the Exchange Act Class, the "Class").  On November 18, 2020, the SEC declared effective the final registration statement on Form F-1 effective, and the following day, the Company filed the final prospectus for Yatsen's IPO, making available approximately 58.75 million ADS to the investing public at $10.50 per ADS.  Plaintiff brings the Securities Act claims against Yatsen, the Individual Defendants (defined

below), the Underwriter Defendants (defined below), Yatsen's largest (and controlling) shareholder, and Yatsen's U.S. representatives (collectively, the "Securities Act Defendants" and together with the Exchange Act Defendants, "Defendants").

4.      Plaintiff makes the following allegations, individually and on behalf of all others similarly situated, by and through Plaintiff's counsel, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of: (i) regulatory filings made by Yatsen to the SEC; (ii) press releases and media reports issued and disseminated by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

5.      Yatsen is a China-based holding company engaged in the production and sale of cosmetics and skincare products.

6.      Throughout the Class Period, Defendants misled investors into believing that Yatsen's two largest and historically most significant brands, *Perfect Diary* and *Little Ondine*, were thriving, thereby driving Yatsen's "healthy" top-line growth at the time of its IPO and quarter after quarter thereafter.

7.      In truth, however, cosmetic and skincare sales of *Perfect Diary* and *Little Ondine* products were declining in the period leading up to (and including at the time of) the IPO, and continued to decline throughout 2021.

## JURISDICTION AND VENUE

8.     The Exchange Act claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

9.     The Securities Act claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act, 15 U.S.C. §§77k and 77o, and SEC rules promulgated thereunder.

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, §22 of the Securities Act, 15 U.S.C. §§77v, and/or §27 of the Exchange Act, 15 U.S.C. §78aa.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)-(c), §22 of the Securities Act, 15 U.S.C. §77v, and/or §27 of the Exchange Act, 15 U.S.C. §78aa, because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, and certain Defendants reside and/or transact business in this District.  In addition, Yatsen's ADS trade on the New York Stock Exchange ("NYSE"), which is located in this District.

12.     In connection with the acts and conduct alleged in this complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

## THE PARTIES

### A.     Plaintiff

13.     Plaintiff purchased Yatsen ADS during the Class Period, as described in the Certification attached hereto and incorporated herein by reference and suffered damages as a result of the violations of the federal securities laws alleged herein.  Plaintiff suffered economic losses

when the true facts about the Company's business, financial condition, and operations were disclosed and the artificial inflation was removed from the price of Yatsen's ADS.

**B.      Defendants**

**1.      Yatsen**

14.      Defendant Yatsen is a China-based holding company engaged in the production and sale of cosmetics and skincare products.  Yatsen conducted its IPO in New York, and its ADS are listed on the NYSE under the ticker symbol "YSG."

**2.      The Individual Defendants**

15.      Defendant Jinfeng Huang ("Huang") serves, and has served at all relevant times, as Chairman of Yatsen's Board of Directors (the "Board"), Founder, and Yatsen's Chief Executive Officer ("CEO").  Defendant Huang reviewed, contributed to, and signed, or caused the signing of, the Offering Documents.  Defendant Huang also participated in making the materially inaccurate, misleading, and incomplete statements alleged herein as Yatsen's CEO.

16.      Defendant Yuwen Chen ("Chen") serves, and has served at all relevant times, as a director on Yatsen's Board, co-founder and Yatsen's chief operating officer ("COO").  Defendant Chen reviewed, contributed to, and signed, or caused the signing of, the Offering Documents. Defendant Chen also participated in making the materially inaccurate, misleading, and incomplete statements alleged herein as Yatsen's COO.

17.      Defendant Jianhua Lyu ("Lyu") serves, and has served at all relevant times, as a director on Yatsen's Board, co-founder, and Yatsen's Chief Sales Officer ("CSO").  Defendant Lyu reviewed, contributed to, and signed, or caused the signing of, the Offering Documents. Defendant Lyu also participated in making the materially inaccurate, misleading, and incomplete statements alleged herein as Yatsen's CSO.

5

18.     Defendant Donghao Yang ("Yang") serves, and has served at all relevant times, as a director on Yatsen's Board and as Yatsen's Chief Financial Officer ("CFO"). Defendant Yang reviewed, contributed to, and signed, or caused the signing of, the Offering Documents. Defendant Yang also participated in making the materially inaccurate, misleading, and incomplete statements alleged herein as Yatsen's CFO.

19.     Defendant Sidney Xuande Huang ("Huang") serves, and has served at all relevant times, as a director on Yatsen's Board. Defendant Huang reviewed, contributed to, and signed, or caused the signing of, the Offering Documents.

20.     Defendant Bonnie Yi Zhang ("Zhang") serves, and has served at all relevant times, as a director on Yatsen's Board. Defendant Zhang reviewed, contributed to, and signed, or caused the signing of, the Offering Documents.

21.     Defendant Colleen A. De Vries ("De Vries") served as Senior Vice President of Defendant Cogency Global Inc. ("Cogency Global"), the designated U.S. representative of Defendant Yatsen, and reviewed, contributed to, signed, or caused the signing of, the Offering Documents.

22.     The Defendants named in ¶¶15-21 above are collectively referred to herein as the "Individual Defendants." The Individual Defendants each signed, or authorized the signing of, the Offering Documents, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the Offering and the Offering Documents, and/or attended or contributed to road shows and other promotions to meet with and present favorable information to Yatsen investors, all motivated by their own, the Company's, and Defendant Hillhouse's financial interests.

### 3.   The Underwriter Defendants

23.     The following underwriters were also instrumental in soliciting and making the securities in the Offering available to the investing public:

| | |
|---|---|
| Morgan Stanley & Co. LLC | 22,912,500 |
| Goldman Sachs (Asia) L.L.C. | 22,912,500 |
| China International Capital Corporation Hong Kong Securities Limited | 7,050,000 |
| Tiger Brokers (NZ) Limited | 2,937,500 |
| China Renaissance Securities (Hong Kong) Limited | 1,762,500 |
| Futu Inc. | 1,175,000 |

24.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents.  Morgan Stanley served as a joint bookrunner of the Offering, and as a representative of all the underwriters.  Morgan Stanley also participated in conducting and promoting the Offering.  Morgan Stanley's participation in the solicitation of the Offering was motivated by its financial interest.  Defendant Morgan Stanley is headquartered in New York, New York.

25.     Defendant Goldman Sachs (Asia) L.L.C. ("Goldman Sachs") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents.  Goldman Sachs served as a joint bookrunner of the Offering, and as a representative of all the underwriters.  Goldman Sachs also participated in conducting and promoting the Offering, agreeing to offer ADS in the United States through its SEC-registered broker-dealer affiliate in the United States, Goldman Sachs & Co. LLC ("Goldman Sachs (USA)").  Goldman Sachs' participation in the solicitation of the Offering was motivated by its financial interest.  Goldman Sachs (USA) is headquartered in New York, New York.

26.     Defendant China International Capital Corporation Hong Kong Securities Limited ("China International") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents.   China International served as a joint bookrunner of the Offering, and as a representative of all the underwriters.   China International also participated in conducting and promoting the Offering.   China International's participation in the solicitation of the Offering was motivated by its financial interest.

27.     Defendant Tiger Brokers (NZ) Limited ("Tiger Brokers") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents.   Tiger Brokers participated in conducting and promoting the Offering.   Tiger Brokers' participation in the solicitation of the Offering was motivated by its financial interest.

28.     Defendant China Renaissance Securities (Hong Kong) Limited ("China Renaissance") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents. China Renaissance participated in conducting and promoting the Offering.   China Renaissance's participation in the solicitation of the Offering was motivated by its financial interest.

29.     Defendant Futu Inc. ("Futu") was an underwriter for the Offering, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's false and misleading Offering Documents.   Futu participated in conducting and promoting the Offering. Futu's participation in the solicitation of the Offering was motivated by its financial interest.

30.     The Defendants listed in ¶¶23-29 are collectively referred to herein as the "Underwriter Defendants."

31.     Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.  In addition, although not an element of Plaintiff's Securities Act claims and an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense, no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.  Each Underwriter Defendant committed acts and omissions that were a substantial factor leading to the harm complained of herein.

32.     Each Underwriter Defendant named herein is an investment banking firm whose activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters of the Offering, the Underwriter Defendants earned lucrative underwriting fees.

33.     As underwriters, the Underwriter Defendants met with potential investors and presented highly favorable, but materially incorrect and/or materially misleading, information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

34.     Representatives of the Underwriter Defendants also assisted Yatsen and the Individual Defendants plan the Offering.  They further purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

35.     In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Yatsen's management, directors, and lawyers to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Yatsen's ADS would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about Yatsen would be made in the Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the Offering Documents.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Yatsen's management, directors, and lawyers, at a minimum, the Underwriter Defendants should have known of Yatsen's undisclosed *then-existing* problems and plans, and the Offering Documents' materially inaccurate, misleading, and incomplete statements and omissions, as detailed herein.

36.     The Underwriter Defendants also demanded and obtained an agreement from Yatsen under which Yatsen agreed to indemnify and hold the Underwriter Defendants harmless from any liability under the Securities Act.

37.     The Underwriter Defendants caused the Offering Documents to be filed with the SEC and declared effective in connection with the Offering, so that they, and the Individual Defendants, could offer to sell, and did sell, Yatsen shares to Plaintiff and the members of the Securities Act Class pursuant (or traceable) to the Offering Documents.

### 4.     Additional Defendants

38.     Defendant Hillhouse, through its venture capital arm, GL Ventures, was Yatsen's largest external shareholder at the time of the IPO.  According to Bloomberg, during the Class Period, Hillhouse sold over 7.76 million ADS.

39.     Defendant Cogency Global was Yatsen's authorized U.S. representative for purposes of the Offering.  Defendant De Vries, who signed the Offering Documents, is an employee of Defendant Cogency Global.  As a result, Defendant Cogency Global is liable for the securities law violations committed by Defendant De Vries, in its capacity as employer and as a control person under the Securities Act.

40.     Yatsen, the Individual Defendants, the Underwriter Defendants, Hillhouse and Cogency Global are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

41.     Yatsen operates in the fast-growing China cosmetics market.

42.     Founded in 2016, Yatsen has launched three color cosmetics and skincare brands: *Perfect Diary*, *Little Ondine*, and *Abby's Choice*.  Together, these three brands served 23.4 million and 23.5 million direct-to-consumer ("DTC") customers in 2019 and the nine months ended September 30, 2020, respectively.

43.     *Perfect Diary*, which is broadly recognized as Yatsen's first and most notable brand, was launched in 2017 to provide "high-quality" and "innovative" color cosmetics targeting Gen Z customers.  According to Defendants, *Perfect Diary* became the top color cosmetics brand in China in terms of online retail sales value within three years of launching.

44.     *Little Ondine*, which is considered Yatsen's second most notable brand, achieved within eight months of relaunch (after first being acquired by Yatsen in 2019) the same level of monthly gross sales as *Perfect Diary* did in its first year and, in September 2020, ranked 5th in the color cosmetics category in terms of total Gross Merchandise Value ("GMV") on Tmall, one of China's largest e-commerce platforms.

45.     Yatsen generates substantially all of its net revenue from the sale of beauty products under these two brands, and, to a lesser extent, *Abby's Choice*.  Yatsen's beauty products are comprised of color cosmetics products, which include eye, face and lip products, skincare products, and other products, which include nail products, beauty tools, kits, and other products such as perfume.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

46.     The Class Period begins on November 19, 2020 when Defendants filed with the SEC the final prospectus on Form 424B4 for Yatsen's IPO.  Therein, Defendants played up the fact that Yatsen had become a leader in the Chinese beauty market because of the previous (and ongoing) successes of its "***fast-growing, successful***" color cosmetics and skincare brands, namely *Perfect Diary* and *Little Ondine*, stating in relevant part:

> ***Our largest brand is Perfect Diary, through which we derived 100.0%, 98.3% and 82.1% of our gross sales in 2018, 2019 and the nine months ended September 30, 2020, respectively***.  Based on our understanding of beauty consumers gained through the data and experience we acquired in growing *Perfect Diary,* we selectively introduced additional brands that cater to different consumer profiles and needs.  In 2019, we acquired *Little Ondine*, a trendy color cosmetics brand, and launched *Abby's Choice*, an in-house brand featuring safe and effective skincare products.  ***Little Ondine enjoys a growing following of customers who have more sophisticated beauty routines and higher purchasing power***.  *Abby's Choice* offers customers a wide selection of skincare products in addition to color cosmetics.

[Emphases added].

47.     Repeatedly, the Offering Documents claim that the Company's product development capabilities and its deep customer insights allow Yatsen to design unique products "***that resonate well with [its] customers***" and, further, that its "***brands are well-recognized by a large and loyal customer base***."  In addition, the Offering Documents frequently tout how "***Perfect Diary became the No. 1 seller in the color cosmetics product category in September 2018***," that *Perfect Diary* "***was the No. 1 color cosmetics brand in terms of total GMV on Tmall in 2019 and***

*the nine months ended September 30, 2020*," and that *Little Ondine*, in particular, presently enjoys "***loyal customers***." Further, the Offering Documents represent that through the strength of these brands and their supposed "loyal" customer bases, Yatsen is "***building a leading, next-generation beauty platform***." [Emphases added].

48.     The Offering Documents also credit the growth observed in *Perfect Diary* and *Little Ondine* for the significant and supposedly ongoing growth Yatsen was experiencing as a whole at the time of the IPO, stating in relevant part:

> Our net revenues ***increased*** by 73.2% from RMB1,888.9 million in the nine months ended September 30, 2019 to RMB3,271.6 million (US$481.9 million) ***in the nine months ended September 30, 2020***, ***primarily attributable to the growth in sales volume of our beauty products*** in the same period driven by increases in the number of DTC customers from 15.7 million in the nine months ended September 30, 2019 to 23.5 million in the nine months ended September 30, 2020 and in average net revenue per DTC customer from RMB106.8 in the nine months ended September 30, 2019 to RMB120.7 in the nine months ended September 30, 2020, which are primarily due to (i) ***the introduction of innovative products and the expansion of product categories offered under our Perfect Diary brand***, (ii) ***the continued development of our Little Ondine brand***, which was introduced in 2019, and the introduction of our new brand *Abby's Choice*, both of which further diversified our beauty product offerings, and (iii) further diversification of our distribution channels, in particular further development of our company channels on Weixin and expansion of our offline experience store footprint.

[Emphases added].

49.     The Offering Documents continue in relevant part:

- ***Perfect Diary***: ***Sales volume under Perfect Diary continued to grow rapidly as we introduced innovative products and expanded into new product categories such as skincare***.  In particular, during Tmall's 2020 Singles' Day Event from November 1, 2020 to November 11, 2020, *Perfect Diary* achieved RMB600 million in GMV on Tmall and ranked No. 1 in the color cosmetics category in terms of GMV on Tmall for the second consecutive year since 2019, according to the CIC Report.

- ***Little Ondine***: ***Sales volume under Little Ondine also continued to grow rapidly and it has proven itself to be a successful second brand for our platform***.  In particular, during Tmall's 2020 Singles' Day Event from

November 1, 2020 to November 11, 2020, *Little Ondine* achieved RMB100 million in GMV on Tmall, according to the CIC Report.

[Emphases added].

50.     On March 11, 2021, Yatsen released its fourth quarter and full year 2020 financial results, representing the first financial results it reported as a publicly traded company.  In speaking on the Company's fourth quarter and full year 2020 performance, Defendant Yang applauded the Company's "***healthy*** top line growth," which he claimed reflected, "***strong performance across [Yatsen's] brand portfolio***," including *Perfect Diary* and *Little Ondine*.  [Emphases added].

51.     That same day, Yatsen hosted an analyst call during which Defendant Yang assured listeners (and the market) that Yatsen was "***continu[ing] to execute*** our strategies in terms of…our existing brands, Perfect Diary, Little Ondine, and Abby's Choice" and "***continu[ing] to grow those brands***."  [Emphases added].  Defendant Yang then explained that the Company was expecting to see contributions to its revenues from new *Perfect Diary* and *Little Ondine* products beginning in 2Q21, stating in relevant part:

> [A]s we mentioned earlier, in Q1, some of the new products for existing brand like Perfect Diary, Little Ondine will not be launched until Q2. And the contribution to our revenue from the newly acquired brands will not present themselves, will not show themselves in our financials starting from Q2.

52.     As far as the market knew, *Perfect Diary's* and *Little Ondine's* supposedly strong performance continued in the first quarter of the new year.  On May 19, 2021, before the market opened, Yatsen released its 1Q21 financial results, reporting sales 2% above the high end of its earlier-issued guidance.  Defendants celebrated the Company's performance, telling the market that "the year is off to a good start with robust topline growth," specifically calling attention to the "***stellar performance of [Yatsen's] flagship Perfect Diary brand as well as robust growth from Little Ondine***," among other brands under Yatsen's portfolio.  [Emphasis added].

53.     During an analyst call held the same day, Defendant Huang reinforced his earlier characterization of *Perfect Diary's* performance, claiming that its growth was "***healthy***." [Emphasis added].

54.     The statements identified in ¶¶46-53 above were materially false and misleading because Yatsen's core brands, *Perfect Diary* and *Little Ondine*, were not "healthy," "stellar," "robust," "grow[ing]," nor "steady."  Rather, Yatsen was observing substantial declines in the performance of its *Perfect Diary* and *Little Ondine* brands in the weeks leading up to the IPO and throughout 2021.

55.     And, for those statements alleged to have been misleading in the Offering Documents, Defendants were required to disclose the above material information for at least two additional independent reasons.  First, Item 303 of SEC Regulations S-K, 17 C.F.R. §229.303 ("Item 303"), imposed an independent duty on Defendants to disclose in the Offering Documents any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.  As of the IPO and the issuance of the Offering Documents, Defendants were aware, but did not disclose, that sales in Yatsen's core brands were declining and that such deterioration was likely to have a material adverse effect on Yatsen's future performance.

56.     The failure of the Offering Documents to disclose material adverse information also violated Item 105 of SEC Regulations S-K, 17 C.F.R. §299.105 ("Item 105").  Specifically, Item 105 provides, in pertinent part, that the "Risk Factors" section of offering documents filed with the SEC discuss the most significant factors that make an offering risky or speculative and that

each risk factor adequately describes the risk.  The Offering Documents' discussion of risk factors are themselves materially misleading because they provide generic statements of potential or contingent risk, yet fail to disclose that the potential future adverse impacts described were ***already*** occurring at the time of the IPO.  For example, the Offering Documents purport to warn:

> ***If*** we are unable to anticipate and respond to the changes in industry trends and consumer preferences and behavior, we ***may*** fail to continuously develop products with wide market acceptance, capture emerging growth opportunities, adopt competitive sales strategies for our existing products, or properly predict and manage our inventory.  Such failure ***could*** also negatively impact our brand image and result in diminished customer experience and brand loyalty.  Any of these occurrences ***could*** materially and adversely affect our business, prospects and results of operations.

[Emphases added].

At the time, however, Defendants had already seen *Perfect Diary's* and *Little Ondine's* performance significantly decline.

### THE TRUTH BEGINS TO EMERGE

57.     Despite repeatedly (and misleadingly) characterizing *Perfect Diary* and *Little Ondine's* performance as "healthy," Defendants slowly began to reveal the truth about Yatsen's flagship brands in the second half of 2021.  On August 26, 2021, during the 2Q21 analyst call within which Defendants touted *Perfect Diary's* and *Little Ondine's* "steady" and "healthy" performance, Defendant Huang Freudianly-admitted that Yatsen's *Perfect Diary* business was (and had been) deteriorating, requiring Yatsen to "***refocus*** and also to devote more resources to continue the growth trend of [its] main brands." According to Defendant Huang, Yatsen had "move[d] to fast to reallocate [its] talent into the skincare BU."

58.     On August 26, 2021, the price of Yatsen's shares declined 17.64%, to close at $4.81 per share.

59.     On or about November 17, 2021, Yatsen's third quarter 2021 financial results reached the market.  Despite characterizing Yatsen's results as a "success," touting top-line continued growth supported by a significant growth of its skincare brands, Defendants acknowledged witnessing a "*soft industry environment for color cosmetics*."  [Emphasis added].

60.     During the analyst call to discuss Yatsen's 3Q21 results, Defendant Huang claimed that the "*significant deceleration in general consumer and color cosmetics spending in China*," was an "industry trend," partially related to the ongoing COVID-19 pandemic.  Notwithstanding, and despite continuing to portray *Perfect Diary's* performance as "*steady*" – it was not – Defendant Huang conceded that gross sales from Yatsen's color cosmetics brands, which make up approximately 84% of total gross sales, *decreased by mid-single digits* due, in part, to "*realignment of Little Ondine*."  [Emphases added].

61.     On this news, Yatsen's stock plummeted, closing on November 17, 2021 at $2.70 per ADS, representing a 17.93% decline from the previous day's close.

62.     Then, on March 10, 2022, Yatsen released its fourth quarter and full year financial results for the period ended December 31, 2021, revealing that its disappointing financial results were not solely due to issues with *Little Ondine* but, rather, *Perfect Diary* as well.  In commenting on the "challenging quarter," Defendant Huang blamed "*soft consumer demand and intense competition in the color cosmetics segment*," for why total net revenues for the fourth quarter decreased 22.1% and gross sales for the fourth quarter decreased 17.2%.  [Emphasis added].

63.     During the Company's earnings call with analysts that same day, Defendant Huang conceded that Yatsen's disappointing results were the result of a deceleration in sales of its leading brands, stating in relevant part:

> While we began on a strong note in the first half of 2021, *we experienced a significant deceleration* in the second half, particularly during the fourth quarter

when total net revenue declined by 22.1% year-over-year.  ***Our total net revenue from color cosmetic brands, including Perfect Diary, Little Ondine***, and Pink Bear ***declined by 33.9% year-over-year in the fourth quarter***.  Although, ***on a full year basis, they were down by only 2.3%*** compared with the prior year.

[Emphases added].

64.     On this news, Yatsen's ADS cratered, ***falling 39.5%*** to close on March 10, 2022 at just over $0.75 per share.

65.     By the commencement of this action, Yatsen's ADS traded as low as $0.39 per ADS, or over a 96% drop from the $10.50 offering price.  All told, investors have lost hundreds of millions of dollars.



## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Yatsen ADS between November 19, 2020 and March 10, 2022, both dates inclusive (the "Class Period"), including in, pursuant to, and/or traceable to the Offering (the "Class").

67.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Yatsen, members of Yatsen's Board, and members of their immediate families (as

defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Yatsen.

68.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company's ADS were actively traded on the NYSE, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the Class.  Millions of Yatsen shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Yatsen or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

69.     Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendants' wrongful conduct in violation of the federal securities laws.  Further, Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class and securities litigation.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

(a)     whether Defendants violated the Exchange Act;

(b)     whether Defendants violated the Securities Act;

(c)     whether Defendants' statements to the investing public during the Class Period omitted and/or misrepresented material facts;

(d)      whether Defendants' statements to the investing public during the Class Period omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)      whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(f)      whether the price of Yatsen's ADS was artificially inflated; and

(g)      the extent of damage sustained by Class members and the appropriate measure of damages.

71.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### CLAIMS FOR RELIEF

### COUNT I
### For Violations of §10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### (Against the Exchange Act Defendants)

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    This Count is asserted on behalf of all members of the Class against Defendants Yatsen, Huang, Yang and Hillhouse for violations of §10(b) and the Exchange Act, 15 U.S.C. §78(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

74.     These Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (a) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; and (b) caused Plaintiff and the other members of the Class to purchase Yatsen shares at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, each of these Defendants took the actions set forth herein.

75.     During the Class Period, these Defendants disseminated or approved the false statements specified herein, among others, which they knew, or deliberately disregarded, were materially misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Yatsen securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.     These Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of Yatsen as specified herein.

78.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse, non-public information, and engaged in acts, practices, and a course of conduct, as alleged herein, in all effort to assure investors of Yatsen's value and

performance and continued substantial growth, which included the making of, or participation in the making of, false statements of material facts and omitting to state material facts necessary in order to make the statements made about Yatsen and its business operations and future prospects, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Yatsen securities.

79.    As described above, these Defendants acted with scienter throughout the Class Period in that they either had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  These Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's results and growth prospects, thereby artificially inflating the price of its securities.  As demonstrated by these Defendants' omissions and misstatements of the Company's business strategy, these Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

80.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of Yatsen's ADS was artificially inflated.  In ignorance of the fact that market prices of Yatsen's ADS were artificially inflated, and relying directly or indirectly on the false and misleading statements made by these Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to, or recklessly disregarded, by these Defendants,

but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class acquired Yatsen securities at artificially high prices and were, or will be, damaged thereby.

81.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff, the other members of the Class, and the marketplace known the truth regarding the Company's business, which was not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased, or otherwise acquired, their Yatsen securities, or if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

82.     By virtue of the foregoing, these Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

83.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

84.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchase of securities giving rise to the cause of action.

## COUNT II
### For Violations of §20A of the Exchange Act
### (Against Defendant Hillhouse)

85.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86.     This Count is brought against Defendant Hillhouse under §20A of the Exchange Act, 15 U.S.C. §78t-1.

87.     Hillhouse knew, recklessly disregarded, or should have known that they had received material, adverse, non-public information and that they owed a fiduciary duty, or

obligation arising from a similar relationship of trust and confidence, to Yatsen to keep this information confidential.

88.    Nevertheless, while in possession of material, non-public, adverse information, Defendant Hillhouse sold over 7.76 million Yatsen ADS.

89.    By virtue of the foregoing, Defendant Hillhouse, in connection with the purchase or sales of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly:

(a)    employed devices, schemes or artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices, or courses of business that operated, or would have operated, as a fraud or deceit upon persons.

90.    By virtue of the foregoing, Defendant Hillhouse directly or indirectly violated, and unless enjoined, will again violate, §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

91.    By virtue of the foregoing, Defendant Hillhouse is liable to Plaintiff and the Class for its insider sales pursuant to §20A of the Exchange Act, 15 U.S.C. §78t-1.

92.    When the material adverse information was eventually revealed, Yatsen's stock price declined and investors suffered economic loss, *i.e.*, damages.

**COUNT III**
**For Violations of §20(a) of the Exchange Act**
**(Against Defendants Huang, Yang and Hillhouse)**

93.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94.     Defendants Huang, Yang, and Hillhouse acted as controlling persons of Yatsen within the meaning of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), as alleged herein.  By virtue of their high-level positions, agency, ownership, contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, these Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  These Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been misleading prior to, and/or shortly after, these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

95.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations, as alleged herein, and exercised the same.

96.     As set forth above, the Exchange Act Defendants each violated §10(b) and Rule 10b-5 promulgated thereunder by their acts and omissions, as alleged in this Complaint.

97.     By virtue of their positions as controlling persons, Defendants Huang, Yang and Hillhouse are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities.

98.    This action as filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

**COUNT IV**
**For Violations of §11 of the Securities Act**
**(Against All Defendants Except Hillhouse)**

99.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100.    This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

101.    The Offering Documents are inaccurate and misleading, containing untrue statements of material facts, omitting facts necessary to make the statements made therein not misleading, and omitting to state material facts required to be stated therein.

102.    The Company is the registrant of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.  By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Yatsen is liable under §11 of the Securities Act to Plaintiff and the Class.

103.    The Individual Defendants each signed the Offering Documents and/or were identified, with their consent, as director designees in the Offering Documents, becoming Directors on Yatsen's Board upon the SEC declaring the Offering Documents effective, and caused the Offering Documents to be issued.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be

26

complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and to ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

104.    The Underwriter Defendants each served as underwriters in connection with the Offering.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents, and the failure of these documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents.  They had a duty to ensure that such statements were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

105.     Defendant De Vries, on behalf of Cogency Global, the U.S. representative identified in the Offering Documents, signed the Offering Documents as Cogency's Senior Vice President.  As such, Cogency Global and De Vries are strictly liable for the materially inaccurate statements contained in Offering Documents, and the failure of these documents to be complete and accurate, unless both are able to carry their burden of establishing an affirmative "due diligence" defense.  Cogency Global, and Defendant De Vries as an employee representative of Cogency Global, each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and to ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, both Cogency Global and Defendant De Vries should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, Cogency Global and Defendant De Vries are both liable to Plaintiff and the Class.

106.     Defendants acted negligently in preparing the Offering Documents.  None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omission of any material facts and were not misleading.  In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

107.     By reasons of the conduct herein alleged, each Defendant named in this Count violated §11 of the Securities Act.

28

108.    None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement.    Rather, each such statement concerned existing facts.    Moreover, the Offering Documents did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

109.    Plaintiff sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Documents.

110.    This Count is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

111.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

### COUNT V
### For Violations of §15 of the Securities Act
### (Against the Individual Defendants)

112.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

113.    This Count is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Individual Defendants.

114.    The Defendants named in this Count were controlling persons of the Company within the meaning of §15 of the Securities Act.    By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, had the power to influence, and exercised same over the Company to cause it to engage in the conduct complained of herein.    Similarly, each Defendant named in this Count not only controlled those subject to liability as primary violators

of §11 of the Securities Act alleged in Count IV above, but they also directly participated in controlling Yatsen by having signed or authorized the signing of the Offering Documents, and authorizing the issuance of Yatsen ADS to Plaintiff and members of the Class.

115.     As control persons of Yatsen, each of the Defendants named in this Count are jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Yatsen for its violations of §11 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Exchange Act Class and the Securities Act Class prays for relief and judgement as follows:

A.     Declaring that this action is a proper class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as a representative of the Exchange Act Class and the Securities Act Class, and designating Plaintiff's counsel as Class Counsel for both the Exchange Act Class and the Securities Act Class;

B.     Awarding compensatory damages in favor of Plaintiff and the other members of the Exchange Act Class against all Exchange Act Defendants, jointly and severally, for all damages sustained as a result of the Exchange Act Defendants' wrongdoing, in an amount to be proved at trial, including interest thereon;

C.     Awarding Plaintiff, the Securities Act Class, and the Exchange Act Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

D.     Awarding rescission or a rescissionary measure of damages; and

E.     Such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: September 23, 2022          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  (212) 223-6444
Facsimile:   (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com

**THE SCHALL LAW FIRM**
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Attorneys for Plaintiff Nancy Maeshiro*