UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE YATSEN HOLDING LIMITED
SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:       22-cv-8165 (DEH) (BCM)
:
:
:
:
:

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000

*Counsel for Defendants Yatsen
Holding Limited, Cogency Global Inc.
and Colleen A. DeVries*

DAVIS POLK & WARDWELL LLP
Brian S. Weinstein
Daniel J. Schwartz
Zainab R. Qureshi
450 Lexington Ave
New York, New York 10017
Phone:  (212) 450-4000

*Counsel for Underwriter Defendants Goldman
Sachs (Asia) L.L.C., Morgan Stanley & Co.
LLC, China Renaissance Securities (Hong
Kong) Limited and Futu Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..............................................................................................3

I.      BACKGROUND ...................................................................................................3

II.     YATSEN'S IPO DISCLOSURES.........................................................................4

        A.      Yatsen Disclosed Risks Relating to Sales Revenue and Volume ...........4

        B.      Yatsen Disclosed Risks Relating to Sales and Marketing and R&D
                Expenses ...................................................................................................6

        C.      Yatsen Disclosed Risks Relating to Competition and Product
                Development ..............................................................................................8

III.    POST-IPO DEVELOPMENTS ............................................................................9

        A.      Yatsen Releases its Q4 and FY2020 Financial Results ...........................9

        B.      Yatsen Releases its Q1 2021 Financial Results .....................................10

        C.      Yatsen Releases its Q2 2021 Financial Results .....................................11

        D.      Yatsen Releases its Q3 2021 Financial Results .....................................11

        E.      Yatsen Releases Its Q4 2021 and FY2021 Financial Results ...............12

ARGUMENT.................................................................................................................13

I.      PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION...................13

        A.      No Misrepresentation Regarding Sales and Revenue ...........................14

                1.      Yatsen Disclosed Slower-Than-Expected Growth Prior to the IPO..........14

                2.      Plaintiffs Fail to Plead That Sales of Core Brands Were Declining..........15

                3.      Yatsen Had No Duty to Disclose Anything Further ................................17

        B.      No Misrepresentation Regarding Sales & Marketing Expenses...........................19

        C.      No Misrepresentation Regarding New Product Launches...................................21

ii

II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER .................22

III.    LACK OF CAUSATION IS APPARENT ON THE FACE OF THE
         COMPLAINT .........................................................................................................23

IV.    PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED.............................25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

*Altayyar v. Etsy, Inc.*,
    242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018)..................18

*Arfa v. Mecox Lane Ltd.*,
    No. 10 CIV. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012),
    *aff'd*, 504 F. App'x 14 (2d Cir. 2012).................................................................16

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ........................................................................23

*Asay v. Pinduoduo Inc.*,
    No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ...............................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................13

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................3, 25

*Board of Trustees of City of Ft. Lauderdale General Employees' Retirement System v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Fredrick v. Mechel OAO*,
    475 F. App'x 353 (2d Cir. 2012) ...............................................................23

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ..............................................................13, 18

*In re Britannia Bulk Holdings Inc. Securities Litigation*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009)..........................................................25

*In re China XD Plastics Co. Securities Litigation*,
    No. 14-CV-05308 (GBD), 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016).........16

*In re Coty Inc. Securities Litigation*,
    No. 14-CV-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).....17, 18, 21

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................24

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)......................................................................19

*In re HEXO Corp. Securities Litigation*,
    524 F. Supp. 3d 283 (S.D.N.Y. 2021).........................................................13

iv

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)...............................................................................................21

*In re IAC/InterActiveCorp Securities Litigation*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010)...........................................................................15, 21

*In re Keyspan Corp. Securities Litigation*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...............................................................................14

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161, 173 (2d Cir. 2005)..................................................................................23, 25

*Lopez v. Ctpartners Executive Search Inc.*,
173 F. Supp. 3d 12 (S.D.N.Y. 2016)............................................................................18, 22

*In re Merrill Lynch & Co.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005). .........................3

*In re Morgan Stanley Information Fund Securities Litigation*,
592 F.3d 347 (2d Cir. 2010).....................................................................................13, 17, 18

*New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo*,
80 F.4th 158 (2d Cir. 2023) ................................................................................................22

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015)............................................................................................................19

*Pew v. Cardarelli*,
164 F. App'x 41 (2d Cir. 2006) ..........................................................................................25

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..........................................................................................13, 18

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)............................................................................................15, 21

*Shemian v. Research In Motion Ltd.*,
No. 11 CIV. 4068 (RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ..........................23

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)..................................................................................................13

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
774 F. Supp. 2d 584 (S.D.N.Y. 2011)................................................................................24

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
412 F. Supp. 3d 353 (S.D.N.Y. 2019),

*aff'd sub nom. Cavalier Fundamental Growth Fund v. Skechers U.S.A., Inc.*, 826 F. App'x 111 (2d Cir. 2020), ......................................................................................18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................................22

*In re Time Warner Inc. Securities Litigation*,
9 F.3d 259 (2d Cir. 1993)................................................................................................17

*Villare v. Abiomed, Inc.*,
No. 19 CIV. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ......................18, 22

**STATUTES**

15 U.S.C. § 77k(e) ...........................................................................................................................24

15 U.S.C. § 77m................................................................................................................3, 25

15 U.S.C. § 78u-4(b)(2) ....................................................................................................................1

15 U.S.C. § 78u–4(b)(2)(A) ............................................................................................................22

15 U.S.C. § 78u-5(c)(1)(A)(i) .........................................................................................................22

17 C.F.R. § 229.303(b)(2)(ii)..........................................................................................................17

Fed. R. Civ. P. 9(b) ......................................................................................................................1, 13

Defendants[1] Yatsen Holding Limited ("Yatsen" or the "Company"), Goldman Sachs (Asia) L.L.C., Morgan Stanley & Co. LLC, China Renaissance Securities (Hong Kong) Limited, Futu Inc. (the "Underwriter Defendants"), Cogency Global Inc. and Colleen A. DeVries respectfully submit this memorandum of law in support of their motion to dismiss the Amended Class Action Complaint ("Complaint" or "AC") (ECF No. 62)[2] pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs bring this putative securities class action based on unsupported claims of allegedly omitted "facts" that the Complaint *confirms* had nothing to do with their alleged losses. Yatsen is a leading Chinese beauty company that produces and sells color cosmetics and skincare products. After its November 2020 initial public offering ("IPO"), in the face of unprecedented challenges caused by the COVID-19 pandemic and soft consumer demand for color cosmetics, Yatsen rapidly pivoted its business to diversify its product portfolio into skincare and successfully grew new products and brands by investing in research and development ("R&D") and marketing. As a result of these prudent strategies (all of which were promptly disclosed), Yatsen reported year-over-year increases in total net revenue in 2020 and 2021—a notable achievement in a challenging and unpredictable business environment. Nevertheless, Plaintiffs bring this Action under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934

---

[1]  Defendants Jinfeng Huang, Yuwen Chen, Jianhua Lyu, Donghao Yang, Sidney Xuande Huang, Bonnie Yi Zhang, China International Capital Corporation Hong Kong Securities Limited, and Tiger Brokers (NZ) Limited have not been served (to the undersigned's knowledge).

[2]  The Complaint is attached as Exhibit A to the Declaration of Robert A. Fumerton, dated December 4, 2023, exhibits to which are otherwise cited herein as "Ex. __." Pincites for all exhibits reference the original pagination at the bottom of the page. All internal quotation marks and citations are omitted, and all emphases are added, unless otherwise indicated.

("Exchange Act"), alleging Yatsen misrepresented or omitted that (i) sales of Yatsen's core brands were declining prior to and after the IPO; (ii) Yatsen's sales and marketing expenses were unsustainable and inhibiting growth; and (iii) Yatsen was unable to rapidly launch new products after the IPO, due in part to insufficient investment in R&D. These claims fail for multiple independent reasons.

First, Plaintiffs fail to plead any material misstatement or actionable omission, which dooms all their claims. Plaintiffs' allegations of omitted "facts" in the Prospectus and Registration Statement ("Offering Documents") (the sole basis for the Securities Act claims) and in subsequent financial reporting (an additional basis for the Exchange Act claims) are flatly contradicted by the Complaint and documents cited therein. Contrary to Plaintiffs' conclusory assertions, Yatsen's net revenues increased year-over-year in Q4 2020 through Q3 2021 and in FY2020 and FY2021, due in large part to the precise strategies Plaintiffs claim were lacking or unsustainable. Plaintiffs do not dispute these disclosures, which timely reported Yatsen's business strategies and related results. Instead, Plaintiffs largely ignore them and cherry-pick disappointing post-IPO revenue guidance or quarterly results that Plaintiffs insist are somehow the result of undisclosed problems with Yatsen's business. Their claim that sales of Yatsen's core brands were declining is based on unsourced, incomplete data relating to just two out of several online platforms on which Yatsen's products are sold. Such allegations fail to show the existence of an undisclosed negative fact, let alone a material one. Nor did Yatsen have any duty to disclose this unverified data. Plaintiffs' claim that Yatsen omitted risks relating to marketing expenses fails because such risks were disclosed. Lastly, Plaintiffs' claim that Yatsen was unable to roll out new products after the IPO is again belied by the Complaint, which confirms that Yatsen more than doubled its brand portfolio in 2021 and successfully launched several new products after the IPO.

2

Second, Plaintiffs' Exchange Act claims should be dismissed because they do not even *attempt* to plead the requisite strong inference of scienter.  Plaintiffs do not allege that the Exchange Act Defendants had a motive to commit fraud or had access to information contradicting their public statements.  Plaintiffs' conclusory assertions that Yasten's executives knew or recklessly disregarded "facts" that the Complaint does not even plausibly allege are plainly insufficient to support a Section 10(b) claim.

Third, all of Plaintiffs' claims should be dismissed because lack of causation is apparent on the face of the Complaint.  Plaintiffs *admit* their losses were caused not by the revelation of the allegedly omitted facts relating to Yatsen's business, but instead by macroeconomic, industry-wide factors including soft consumer demand and intensifying competition from foreign companies.

Finally, Plaintiffs' Securities Act claims are time-barred.  Securities Act claims must be brought within one year of when the untrue statement or omission was or should have been discovered.  15 U.S.C. § 77m.  Plaintiffs allege that the "truth" about Yatsen's business was first revealed on August 26, 2021, more than a year before this Action was filed on September 23, 2022.

<b><u>STATEMENT OF FACTS</u></b>[3]

## I.     BACKGROUND

Founded in 2016, Yatsen is a leading Chinese beauty company engaged in the production and sale of color cosmetics and skincare products.  (AC ¶ 2; Ex. B, Yatsen Prospectus, at 1.)  At the time of its November 2020 IPO, Yatsen's portfolio of color cosmetics and skincare brands included two home-grown brands—*Perfect Diary* and *Abby's Choice*—and two acquired brands—

---

[3]  These facts are drawn from the well-pled allegations in the Complaint and documents attached to, integral to, or incorporated by reference into the Complaint, as well as matters subject to judicial notice. *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005).  The Court may also consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

3

*Little Ondine* and *Galénic*.  (AC ¶ 3; Ex. B at 160.)  Its largest brand is *Perfect Diary*, a leading color cosmetics brand through which Yatsen derives most of its gross sales.  (Ex. B at 160.)

Yatsen generates revenue primarily by selling beauty products (i) directly to end customers through its direct-to-customer ("DTC") online channels, which account for the majority of net revenue; (ii) to e-commerce platform distributors like JD.com and Vipshop that then sell to end customers; and (iii) through other channels, including its offline experience stores.  (*Id.* at 114-15.)  Yatsen attributes its success to its new DTC business model, which enables Yatsen directly to engage with customers and to collect data on customer behavior and preferences.  (*Id.* at 1.)  Yatsen's DTC operations span several popular online channels, including e-commerce channels like Alibaba's Tmall, and social and content platforms such as Weixin (WeChat), Douyin (China's TikTok), Kuaishou, Bilibili, and RED.  (AC ¶ 46; Ex. B at 1, 3, 115.)

Yatsen has experienced significant growth since its inception.  The Company's total net revenues increased from approximately RMB635.3 million in 2018 to RMB3.03 billion in 2019—a 376.94% growth rate.  (AC ¶ 45; Ex. B at 2.)  In the nine months ended September 30, 2020, total net revenue increased to approximately RMB3.27 billion—a 73.02% percent increase from RMB1.89 billion for same period in 2019.  (AC ¶ 45; Ex. B at 2.)

## II.    YATSEN'S IPO DISCLOSURES

### A.    Yatsen Disclosed Risks Relating to Sales Revenue and Volume

Yatsen launched its IPO on the New York Stock Exchange ("NYSE") on November 19, 2020, pricing its shares at $10.50 per ADS.  The Offering Documents fully and accurately disclosed the Company's historical financial performance, including its gross sales and total net revenue.  (Ex. B at 2; AC ¶ 60.)  The Offering Documents also disclosed net revenue data for *Perfect Diary* specifically, and for other brands, which at the time of the IPO included *Little Ondine* and *Abby's Choice*.  Contrary to Plaintiffs' claims that growth of Yatsen's principal brands had

4

stalled before the IPO (*see* AC ¶¶ 50-55), net revenue from *Perfect Diary* sales actually ***increased by 39.80%*** year-over-year in the nine months ended September 30, 2020, to RMB2.61 billion:

| | For the Year Ended December 31, | | | | | For the Nine Months Ended September 30, | | | | |
| | 2018 | | 2019 | | | 2019 | | 2020 | | |
| | RMB | % | RMB | US$ | % | RMB | % | RMB | US$ | % |
| | | | | | (in thousands, except for percentages) | | | | | |
| **Net revenues** | | | | | | | | | | |
| Sales of product by brand | | | | | | | | | | |
| —*Perfect Diary* | 630,080 | 99.2 | 2,960,454 | 436,028 | 97.7 | 1,867,325 | 98.9 | 2,610,505 | 384,485 | 79.8 |
| —Others | 5,236 | 0.8 | 70,713 | 10,415 | 2.3 | 21,605 | 1.1 | 661,067 | 97,365 | 20.2 |
| **Total net revenues** | **635,316** | **100.0** | **3,031,167** | **446,443** | **100.0** | **1,888,930** | **100.0** | **3,271,572** | **481,850** | **100.0** |

(Ex. B at 114.)

Nevertheless, the Offering Documents alerted investors to ongoing adverse trends, including slower-than-expected growth prior to the IPO (*see* AC ¶ 60):

> Due to the overall weakening consumer sentiment and purchasing activities as a result of the impact of COVID-19, ***our sales volume and total net revenues experienced slower-than-expected growth in the nine months ended September 30, 2020.*** . . . Despite this slowdown, net revenues generated through online channels continued to grow in the nine months ended September 30, 2020 compared with the same period in 2019. . . . However, due to market conditions and consumer demand being less favorable than we expected . . . as a result of the impact of COVID-19, we recorded . . . a ***slight decrease in our gross profit margin*** from 64.1% in the nine months ended September 30, 2019 to 63.1% in the nine months ended September 30, 2020. (Ex. B at 35-36.)

The Offering Documents also disclosed significant net losses during the same period:

> ***We have incurred net loss in the past, and we may not be able to achieve or maintain profitability in the future.*** We incurred net loss of RMB40.1 million in 2018 and generated net income of RMB75.4 million (US$11.1 million) in 2019. ***We generated net loss of RMB1,157.2 million (US$170.4 million) in the nine months ended September 30, 2020***, compared to net income of RMB29.1 million in the nine months ended September 30, 2019 . . . We cannot assure you that we will be able to generate net profits or positive cash flow from operating activities in the future. (*Id.* at 27 (first emphasis in original).)

Yatsen also warned that it "may be unable to manage [its] growth effectively or efficiently" (*id.*) and that "***revenue could decline or grow more slowly than [it] expect[s]***" (*id.* at 23).

5

B.      **Yatsen Disclosed Risks Relating to Sales and Marketing and R&D Expenses**

The Offering Documents also warned that Yatsen had incurred significant marketing

expenses prior to the IPO, which could adversely impact its business:

> ***We have incurred significant costs for a variety of sales and marketing efforts,
> including mass advertising and heavy promotions to attract customers through
> multiple channels.  If we are unable to conduct our sales and marketing efforts
> in a cost-effective and efficient manner, our results of operations and financial
> conditions may be materially and adversely affected.***  As a relatively young
> company, we have invested, and will continue to invest, a large amount of financial
> and other resources in promoting our brand awareness and acquiring customers . . .
> In the fiscal years ended December 31, 2018 and 2019 and the nine months ended
> September 30, 2020, we incurred RMB309.3 million, RMB1,251.3 million
> (US$184.3 million) and RMB2,033.8 million (US$299.5 million) in selling and
> marketing expenses, accounting for 48.7%, 41.3% and 62.2% of our total net
> revenues, respectively.  (*Id.* at 31 (emphasis in original).)

The Company emphasized that the impact of the COVID-19 pandemic had contributed to

a significant increase in selling and marketing expenses as a percentage of total net revenues and

noted that its "***results of operations will depend on future developments of the COVID-19***

***pandemic, which are highly uncertain and difficult to predict***" (*id.* at 36):

> [A]s a result of the impact of COVID-19, our ROI on advertising, marketing and
> brand promotion spending decreased and, as the impact of COVID-19 in China
> gradually declined in the third quarter of 2020, we further stepped up our marketing
> efforts to capture the resurgence in consumer sentiment and social activities. ***Such***
> ***impacts contributed to the increase of our selling and marketing expenses as a***
> ***percentage of total net revenues from 42.6% for the nine months ended***
> ***September 30, 2019 to 62.2% for the nine months ended September 30, 2020***.
> (*Id.*)

Yatsen also reported that net losses from operations in the nine months ended September

30, 2020 were "***primarily due to the significant increases in our selling and marketing expenses***

and general and administrative expenses during the same period."  (*Id.* at 121-22.)

The Company warned that its marketing efforts may not be successful or cost-effective,

and that it may not be able to continue its marketing strategies:

6

Our marketing and branding activities may not be well received, successful or cost-effective, which may lead to significantly higher marketing expenses in the future. *We may also not be able to continue our existing marketing and branding activities* . . . Failure to refine our existing marketing strategies or introduce new effective marketing strategies in a cost-effective manner could negatively impact our business, results of operations and financial condition. (*Id.* at 31-32.)

Yatsen also disclosed substantial increases in R&D expenses from about RMB2.6 million in 2018 to RMB23.2 million in 2019—*a 792.31% increase*—and from about RMB9.8 million in the nine months ended September 30, 2019 to RMB40.9 million in the same period in 2020—*a 317.35% increase*. (*Id.* at 116.) Yatsen warned that such significant expenditures were likely to continue, and that it may be unable to generate sufficient revenue to make up for such costs:

> *We also expect to continue to make significant future expenditures* . . . including: investments in our product development team and *research and development team and in the development of new products; investments in sales and marketing*, enlarging our customer base and promoting market awareness of our brands and products . . . As a result of these significant expenses, we will have to generate sufficient revenue to remain profitable in future periods. *We may not generate sufficient revenue for a number of reasons, including potential lack of demand for our products, increasing competition, challenging macro-economic environment, the ramifications of the COVID-19 pandemic, as well as other risks discussed elsewhere in this prospectus.* (*Id.* at 27-28.)

The Offering Documents also disclosed quarterly financial data from Q1 2019 to Q3 2020, which showed that total net revenue and gross profit had decreased in Q1 2020 and Q2 2020, and that selling and marketing expenses and R&D expenses had increased in each of the first three quarters of 2020, resulting in losses for the same periods (*id.* at 124):

| | For the Three Months Ended, | | | | | | |
|---|---|---|---|---|---|---|---|
| | March 31, 2019 | June 30, 2019 | September 30, 2019 | December 31, 2019 | March 31, 2020 | June 30, 2020 | September 30, 2020 |
| | (RMB in thousands) | | | | | | |
| Total net revenues | 446,103 | 682,598 | 760,229 | 1,142,237 | 1,012,109 | 993,238 | 1,266,225 |
| Total cost of revenues | (161,285) | (251,742) | (264,554) | (425,928) | (387,720) | (386,224) | (434,613) |
| Gross profit | 284,818 | 430,856 | 495,675 | 716,309 | 624,389 | 607,014 | 831,612 |
| Operating expenses: | | | | | | | |
| Fulfilment expenses | (57,147) | (61,893) | (67,868) | (113,214) | (107,135) | (81,666) | (91,536) |
| Selling and marketing expenses | (217,302) | (253,058) | (334,576) | (446,334) | (556,902) | (622,534) | (854,316) |
| General and administrative expenses | (27,431) | (31,672) | (78,340) | (71,883) | (124,120) | (216,845) | (515,878) |
| Research and development expenses | (734) | (1,637) | (7,397) | (13,411) | (12,191) | (14,267) | (14,444) |
| Total operating expenses | (302,614) | (348,260) | (488,181) | (644,842) | (800,348) | (935,312) | (1,476,174) |
| Income (loss) from operations | (17,796) | 82,596 | 7,494 | 71,467 | (175,959) | (328,298) | (644,562) |

7

Yatsen also cautioned that "***quarterly operating results may fluctuate due to seasonality and other factors, which makes our results of operations difficult to predict and may cause our quarterly results of operations to fall short of expectations***" (*id.* at 50 (emphasis in original)):

> For instance, we generate a substantial portion of our net revenues in the second and the fourth calendar quarters as a result of higher sales volume during a series of shopping festivals across e-commerce platforms, such as '618,' 'Singles' Day' and 'Double Twelve' . . . ***However, as a result of the negative impact of COVID-19, [] net revenues experienced slower-than-expected growth and [] selling and marketing expenses as a percentage of net revenues increased in the first, second and third quarters of 2020***. (*Id.*)

Yatsen warned that "comparing our operating results on a period-to-period basis may not be meaningful, and ***you should not rely on our past results as an indication of our future performance***." (*Id.*) It also noted that its "metrics are calculated using our internal data as well as third-party platform's data" and "***may differ from estimates published by third parties*** or from similarly titled metrics used by other companies due to differences in methodology." (*Id.* at 43.)

### C.     Yatsen Disclosed Risks Relating to Competition and Product Development

As Yatsen made clear, investment in marketing and R&D was necessary given the "highly competitive market" in which it operates, particularly as "our brand awareness among consumers may not be as strong as the more established beauty brands." (*Id.* at 28.) It warned that its business may be impacted if it failed to compete through successful marketing and product launches:

> Competition in the beauty industry is intense and based on multiple factors, including the ***ability to launch new products***, pricing of products, quality of products and packaging . . . ***promotional activities*** . . . and other activities. ***We must compete with a high volume of new product introductions*** and a large number of existing products sold by diverse companies across several different distribution channels . . . ***If we are unable to continue to compete effectively, we may lose our market share and our business, results of operations and financial condition may be materially and adversely affected***. (*Id.* at 24.)

Yatsen disclosed that while growth depended on its ability to launch new products, "***we may be unable to introduce new products that appeal to consumers.***" (*Id.* at 23.)

8

### III.    POST-IPO DEVELOPMENTS

On the day of Yatsen's November 19, 2020 IPO, its ADS price closed at $18.40—a 75.24% increase from its IPO price of $10.50.  In early 2021, shortly after the IPO, the market saw a drastic downturn in the share prices of U.S.-listed Chinese companies, which continues to this day.  (Ex. C, Chinese Share Prices).  Yatsen was no exception.  By August 25, 2021—the day *before* Plaintiffs' alleged first corrective disclosure (AC ¶ 145)—Yatsen's ADS price had already fallen 68.26% from its closing price of $18.40 on the day of the IPO.  (Ex. D, Yatsen Share Prices.)

### A.    Yatsen Releases its Q4 and FY2020 Financial Results

On March 11, 2021, Yatsen released unaudited financial results for Q4 and FY2020. (Ex. E, Q4 2020 and FY2020 Results.)  Yatsen reported that in Q4 2020, total net revenues *increased 71.7%* year-over-year to about RMB1.96 billion, and in FY2020, total net revenues *increased 72.6%* year-over-year to about RMB5.23 billion.  (*Id.* at 4, 6.)  Selling and marketing expenses increased 209.21% year-over-year to RMB1.38 billion in Q4 2020 (70.3% of total net revenues). (*Id.* at 5.)  R&D expenses increased 91.04% year-over-year to RMB25.6 million in Q4 2020.  (*Id.*) Yatsen issued guidance for Q1 2021 of 35% to 40% year-over-year net revenue growth.  (*Id.* at 7.)

During an analyst call the same day, CEO Jinfeng Huang noted that while "color cosmetics are the foundation of our business and a dominant contributor to revenue, . . . [o]ur ideal portfolio will consist of diversified brands with varying marketing positioning."  (Ex. F, Mar. 11, 2021 Earnings Tr. at 4.)  He explained that "*we plan on introducing some more brands . . . in target market segments where we see considerable room for growth*," pointing to the recent acquisitions of skincare brands *Galénic*, *Dr. Wu*, and *Eve Lom*, as well as new strategic partnerships to "enhanc[e] our R&D capabilities . . . for color cosmetics."  (*Id.*).  He noted that Yatsen planned "*to launch new products or product categories*" for *Perfect Diary* in Q2 and Q3 2021.  (*Id.* at 12.) CFO Donghao Yang warned that this year is *"going to be another loss making year because our*

*current focus is on top line growth.*"  (*Id.* at 11.)  That day, the Company's ADS price remained relatively stable, decreasing just 0.24% from the prior day's close of $16.49, to close at $16.45.

## B.    Yatsen Releases its Q1 2021 Financial Results

On May 19, 2021, Yatsen released its Q1 2021 financial results.  (Ex. G, Q1 2021 Results.) Total net revenues *increased 42.7%* year-over-year to about RMB1.44 billion (*above* prior guidance).  (*Id*. at 4.)  Selling and marketing expenses increased 86.75% year-over-year to about RMB1.04 billion (72.1% of total net revenues), primarily due to "*investment in promotions and consumer awareness-building for the newer brands*" and "testing of . . . new traffic acquisition channels."  (*Id.* at 5.)  R&D expenses increased 127.05% year-over-year to about RMB27.7 million.  (*Id.*)  Yatsen issued guidance for Q2 2021 of 50% to 55% net revenue growth.  (*Id.* at 6.)

During an analyst call the same day, CEO Huang remarked that "we're quite happy . . . because we [saw] growth of *Perfect Diary*, *mainly coming from the newly launched [products]*" and "*Little Ondine* also experienced robust year-over-year growth in the quarter, *powered by several well received product launches*."  (Ex. H, May 19, 2021 Earnings Tr. at 4, 15.)  He also discussed other product launches for new brands, including newly-launched cosmetics brand *Pink Bear*.  (*Id.* at 4.)  He explained that "*Pink Bear* is playing a very important strategy role" to cater to teens and young adults, as Yatsen sought to "price up" new *Perfect Diary* products and move the brand "to the high end of the mass market."  (*Id.* at 12-13.)  He disclosed a "change in [] resource allocation with more focus on" (i) skincare brands, (ii) improving ROI for *Little Ondine* and *Abby's Choice*, and (iii) "pric[ing] up" *Perfect Diary* as a premium brand.  (*Id.* at 12.) Management also noted that Yatsen had seen an "increase in diversity and balance of our channel mix," "which *boosted the sales contribution from non-traditional e-commerce channels*" like Douyin and Kuaishou (as opposed to traditional channels like Tmall).  (*Id.* at 4, 18.)  That day, Yatsen's ADS price decreased by 4.58% from the prior day's close of $9.82 to close at $9.37.

10

### C.     Yatsen Releases its Q2 2021 Financial Results

On August 26, 2021, Yatsen released its Q2 2021 financial results—Plaintiffs' first alleged corrective disclosure.  (Ex. I, Q2 2021 Results; AC ¶ 145.)  Total net revenues *increased by 53.5%* year-over-year to about RMB1.53 billion (within prior guidance).  (Ex. I at 4.)  Selling and marketing expenses increased 56.22% year-over-year to RMB972.5 million (63.8% of total net revenues). (*Id.* at 5.)  R&D expenses were RMB35.21 million, a 146.15% year-over-year increase. (*Id.*)  Yatsen issued guidance for Q3 2021 of 5% to 10% net revenue growth, mainly due to "the unusual quarterly seasonality pattern caused by the COVID-19 pandemic last year." (*Id.* at 6.)

During an analyst call the same day, CEO Huang remarked that "these solid results came despite intensifying competition and rising customer acquisition costs."  (Ex. J, Aug. 26, 2021 Tr. at 3.)  He observed that across China's beauty market, "growth in the premium segment and in skincare was notably stronger than other market segments," and "*we believe this . . . validates a set of strategic growth initiatives we launched in May to sharpen our growth model*," including, *inter alia*, focusing resources on skincare, which had grown to represent more than 20% of gross sales. (*Id.*)  CFO Yang noted that "*because we already [undertook] some very good initiatives to grow the skincare brand[s]*," "we are refocusing on the growth on *Perfect Diary*" in response to "higher, more intense competition in cosmetics." (*Id.* at 10.)  As in previous quarters, CEO Huang discussed "*several new products*" across all brands. (*Id.* at 3-5.)  He also noted that "we have seen higher growth rates outside of Tmall in terms of channel mix." (*Id.* at 14.)  That day, Yatsen's ADS price fell 17.64% from the prior day's close of $5.84, to close at $4.81.

### D.     Yatsen Releases its Q3 2021 Financial Results

On November 18, 2021, Yatsen released its Q3 2021 financial results.  (Ex. K, Q3 2021 Results.)  Total net revenues increased 6% year-over-year to about RMB1.34 billion (within prior guidance). (*Id.* at 4.)  Selling and marketing expenses increased 6.67% year-over-year to about

11

RMB911.3 (67.9% of total net revenues). (*Id.* at 5.) R&D expenses increased 147.61% year-over-year to about RMB35.8 million. (*Id.*) Yatsen issued guidance for Q4 2021 of a 15% to 20% year-over-year decline in net revenue, "primarily due to the prior year period's high comparison basis and softer-than-expected industry-wide color cosmetics sales." (*Id.* at 6.)

CEO Huang stated that "[d]espite a challenging macroeconomic backdrop and soft industry environment for color cosmetics, our topline continued to grow in the third quarter, supported by a significant growth of our skincare brands." (*Id.* at 4.) He noted that "[w]e introduced *several effective new products*" for multiple brands. (Ex. L, Nov. 18, 2021 Tr. at 4-5.) He also observed that "Tmall is taking around [] 40% of sales for the total company," and "[w]e see the percentage is declining," while sales on platforms like Douyin continued to increase. (*Id.* at 15.) That day, Yatsen's ADS price *increased* by 10.74% from the prior day's close of $2.70, to close at $2.99.

### E.    Yatsen Releases Its Q4 2021 and FY2021 Financial Results

On March 10, 2022, Yatsen released Q4 and FY2021 financial results. (Ex. M, Q4 2021 and FY2021 Results.) Although total net revenues in Q4 2021 decreased by 22.1% year-over-year to about RMB1.53 billion, total net revenues in FY2021 *increased* by 11.6% to about RMB5.84 billion. (*Id.* at 4.) Selling and marketing expenses in Q4 2021 decreased 21.79% year-over-year to about RMB1.08 billion (70.7% of total net revenues). (*Id.* at 5.) R&D expenses in Q4 2021 increased 69.14% year-over-year to about RMB43.3 million. (*Id.*) CEO Huang noted that "[t]he fourth quarter was a challenging quarter, marked by soft consumer demand and intense competition in the color cosmetics segment," but "*[d]espite the challenges, we increased our topline and gross margin on a full-year basis, driven by the significant growth of our skincare brands*." (*Id.* at 4.)

Contrary to Plaintiffs' assertions that Defendants revealed "fundamental issues with the Company's business and strategy" (*see, e.g.*, AC ¶ 140), CEO Huang again explained how Yatsen

12

successfully implemented new strategies in light of challenging market conditions, including by "***building a diversified brand portfolio . . . upgrading our R&D capabilities, and promoting iconic durable brands with reduced discounts and promotions***." (Ex. N, Mar. 10, 2022 Tr. at 3.) That day, Yatsen's ADS price fell 39.52% from the prior day's close of $1.24, to close at $0.75.

## ARGUMENT

To state a claim under Section 10(b) of the Exchange Act, Plaintiffs must allege: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) loss causation." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). Plaintiffs' Section 11 claim requires them to allege that "the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). Failure to plead a primary violation of Section 11 or Section 10(b) precludes a claim for control person liability under Section 15 or Section 20(a). *Id.* at 366.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' claims also are subject to Rule 9(b), which requires they "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and the PSLRA, which requires they "set forth the facts on which [a] belief that a statement is misleading was formed." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012). These heightened pleading standards apply to Exchange Act claims and to Securities Act claims that "sound in fraud," as here. *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 n.17 (S.D.N.Y. 2021). Plaintiffs expressly base their Exchange Act and Securities Act claims on the same allegations. (*E.g.*, AC ¶¶ 99, 102.)

13

## I.   PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION

Plaintiffs' failure to plead any material misrepresentation or omission in the Offering Documents or in Yatsen's subsequent financial reporting is fatal to ***all*** of their claims.  Plaintiffs premise their claims on alleged failures to disclose that (i) growth of two of Yatsen's brands, *Perfect Diary* and *Little Ondine*, were stalling and/or declining on two e-commerce platforms, namely, Tmall and Taobao; (ii) Yatsen's sales and marketing expenses had risen to "unprecedented levels" by the time of the IPO, which was "not sustainable due to the Company's mounting losses"; and (iii) high marketing expenses and lack of investment in R&D inhibited Yatsen's ability to rapidly introduce new products to the market.  (AC ¶¶ 66-68, 102, 112.)  Plaintiffs contend that these alleged omissions rendered misleading the Offering Documents and Yatsen's financial reporting between March 11, 2021 and November 17, 2021.  But the Complaint fails to plead any plausible—much less particularized—basis for these omissions and demonstrates on its face that the allegedly omitted information either was disclosed or was not subject to any duty to disclose.[4]

### A.   No Misrepresentation Regarding Sales and Revenue

#### 1.   Yatsen Disclosed Slower-Than-Expected Growth Prior to the IPO

Contrary to Plaintiffs' claim (*see* AC ¶ 69), the Offering Documents expressly warned of a slowdown in growth prior to the IPO.  "Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed."  *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003).  Yatsen disclosed that "[d]ue to the overall weakening consumer sentiment and purchasing activities as a result of the impact of COVID-19, ***our sales volume and total net revenues experienced slower-than-expected growth in the nine months ended September 30, 2020***."  (Ex. B at 35-36; AC ¶ 65.)

---

[4]   Because Plaintiffs do not allege any actionable misrepresentation in the Offering Documents, their Section 11 claim—the sole claim against the Underwriter Defendants—must be dismissed.

14

## 2.   Plaintiffs Fail to Plead That Sales of Core Brands Were Declining

Plaintiffs fail to plead facts supporting their main premise that sales of *Perfect Diary* and *Little Ondine* were declining or stalling during the relevant periods.  In fact, their claim that growth of *Perfect Diary* was declining in the months prior to the IPO is directly contradicted by undisputed disclosures in the Offering Documents, which showed that net revenues from sales of *Perfect Diary* ***increased by 39.80%*** year-over-year in the nine months ended September 30, 2020.  (Ex. B at 114.)  Similarly, net revenue from sales of Yatsen's other brands—which at the time of the IPO included *Little Ondine* and *Abby's Choice*—***increased 2,959.79%*** during the same period.  (*Id.*)

Critically, Plaintiffs do not allege that these historical financial data were false.  Instead, they point to ***unsourced***, ***incomplete*** third-party data purporting to measure various sales metrics for *Perfect Diary* and *Little Ondine* only on Tmall/Taobao—just two of several platforms where Yatsen conducts online sales.  (AC ¶¶ 50-52.)  These allegations fail to state a claim.

First, Plaintiffs do not provide support for their allegations of a decline in sales for *Perfect Diary* and *Little Ondine*.  Plaintiffs cite no source for the alleged sales data from Tmall/Taobao; nor do they allege any facts to show that this unsourced data is accurate or reliable.  (*Id.* ¶¶ 50-53, 66-67, 111, 119-20, 132, 140.)  As the Second Circuit has made clear, such "unsupported general" allegations of "reports that revealed the larger decline in sales [are] insufficient to survive a motion to dismiss." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 812 (2d Cir. 1996).  Rather, Plaintiffs must plead specific details, including "who prepared the . . . figures, when they were prepared, [and] how firm the numbers were," to support a claim under Section 10(b).  *Id.* at 813.  Even under Rule 8, without "facts that might corroborate" them, such unsupported "allegations do not provide enough detail to nudge plaintiffs' claims across the line from conceivable to plausible." *In re IAC/InterActiveCorp Sec. Litig*., 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (dismissing Section 11 claim under Rule 8(a)).

15

Second, even accepting this unsourced data *arguendo*, these sales figures are, by Plaintiffs' own admission, ***incomplete***. As Plaintiffs concede (AC ¶ 46), Yatsen sells products through several online platforms, including traditional e-commerce platforms like Tmall, Taobao, JD.com, and Vipshop, and social e-commerce platforms such as Weixin, Douyin, Bilibili, Kuaishou, and RED (Ex. B at 1, 5, 172). In fact, as Yatsen disclosed, sales on platforms like Tmall and Taobao accounted for a decreasing percentage of sales after the IPO, as consumers moved to newer platforms like Douyin and Kuaishou. (*See, e.g.*, Ex. L at 15 (Tmall accounted for 40% of Q3 2021 sales, and "[w]e see the percentage is declining.").) Hence, the unsourced data cited by Plaintiffs relates only to sales on Tmall/Taobao and does not reflect all online sales of Yatsen's brands, let alone sales made through its offline stores. Claims based on such incomplete data are "pure speculation" and insufficient to plead a securities violation. *In re China XD Plastics Co. Sec. Litig.*, No. 14-CV-05308 (GBD), 2016 WL 1241522, at *6 (S.D.N.Y. Mar. 23, 2016) ("It is not reasonable to infer that . . . SEC filings must be false based upon a comparison to less than a complete set of" information); *see also Arfa v. Mecox Lane Ltd.*, No. 10 CIV. 9053, 2012 WL 697155, at *12 (S.D.N.Y. Mar. 5, 2012) (no Section 11 claim as incomplete data did not render disclosure of "profits related to *all entities*" false), *aff'd*, 504 F. App'x 14 (2d Cir. 2012).

Finally, the alleged third-party sales volume data for *Perfect Diary*, which measures sales by undefined "units," is insufficient to show that growth of the brand was declining. (AC ¶¶ 50-52.) As Yatsen disclosed, it began to "price up" *Perfect Diary* products in 2021 in an effort to re-position *Perfect Diary* as a premium brand. (Ex. H at 12.) Hence, these allegations of sales "units" fail to establish that *Perfect Diary* sales *revenues* were declining, and do not render misleading any challenged statements regarding the brand's growth in revenue or gross sales.

### 3.    Yatsen Had No Duty to Disclose Anything Further

Even if the Complaint pled facts sufficient to show that sales of *Perfect Diary* and *Little Ondine* were declining during the relevant periods (and it does not), Plaintiffs' claims still would fail because they cannot establish that the Company had any duty to disclose the allegedly omitted information.  "[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.  Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  Plaintiffs must plead that Yatsen was either under an affirmative obligation to disclose, or that disclosure was "necessary to make the statements therein not misleading."  *Morgan Stanley*, 592 F.3d at 358-59.

Plaintiffs cite no affirmative duty to disclose sales data on to Tmall/Taobao specifically.  Instead, they argue that Item 303 of Regulation S-K required Yatsen to disclose "that sales in Yatsen's core brands had stalled and/or were declining."  (AC ¶ 69.)  Item 303 requires an issuer to "[d]escribe any ***known*** trends or uncertainties that have had or that are reasonably likely to have a material . . . unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(b)(2)(ii).  To state an Item 303 claim, Plaintiffs must allege that the trend was "both [1] presently known to management and [2] reasonably likely to have material effects on [Yatsen's] financial condition or results of operations."  *Coty*, 2016 WL 1271065, at *5.  However, Plaintiffs fail to plead any facts showing the unsourced data was known (or even available) to management, or that it should have led them to conclude that any alleged trends on just ***two*** platforms were "reasonably likely" to materially impact Yatsen's financial condition.[5]

---

[5]    Plaintiffs also fault Yatsen for failing to disclose in the Offering Documents that *Perfect Diary*'s "sales volume on Tmall/Taobao was flat year-over-year in November 2020," ignoring that the IPO occurred on November 19, 2020.  (AC ¶ 66.)  Yatsen could not have disclosed November 2020

*(cont'd)*

17

Plaintiffs also fail to show that disclosure of the alleged Tmall/Taobao sales data was "necessary to prevent existing disclosures from being misleading." *Morgan Stanley*, 592 F.3d at 360. Plaintiffs point to disclosures of accurate historical data, puffery, and opinions—none of which was misleading. First, "[w]hatever the scope of the responsibility not to make statements that constitute 'half-truths,' that surely does not apply to the reporting of unmanipulated corporate earnings." *Boca Raton*, 506 F. App'x at 38; *see also Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 180 (E.D.N.Y. 2017) ("[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data."), *aff'd*, 731 F. App'x 35 (2d Cir. 2018). (*See* AC ¶¶ 60, 62, 64-67, 104, 113, 122, 125-27, 135-38.) Second, "expressions of puffery and corporate optimism do not give rise to securities violations," *Rombach*, 355 F.3d at 174, because "they are too general to cause a reasonable investor to rely upon them." *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 28 (S.D.N.Y. 2016); *see id.* at 29 (no duty "to make [] representations not misleading" where "the representations were not material in the first place"). Here, most of challenged disclosures are generic statements about growth or expressions of corporate optimism, which are precisely the type of statements that numerous courts have held to be immaterial puffery.[6] Finally, Yatsen's guidance projections (AC ¶¶ 104, 113, 122, 135) and

---

data ***before*** the end of the month, and "[P]laintiffs are not allowed to plead Section 11 claims with the benefit of 20/20 hindsight." *In re Coty Inc. Sec. Litig.*, No. 14-CV-919 (RJS), 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016).

[6] For example, statements of "substantial," "robust," "healthy," or "powerful top-line growth," the "success of [its] growth strategy," or the "popularity" and "deep market appeal" of its "fast-growing" brands are puffery, as are optimistic expressions of "confiden[ce]" that Yatsen is "well positioned" to "boost[] [] market share," capture "unique opportunities," and execute "growth strategies." (AC ¶¶ 59-60, 64 105-09, 114-16, 123-27, 130, 136, 138.) *See Villare v. Abiomed, Inc.*, No. 19 CIV. 7319 (ER), 2021 WL 4311749, at *13-14 (S.D.N.Y. Sept. 21, 2021) (statements of "sustainable growth," and that company is "well positioned" to "remain one of the fastest-growing" companies are puffery); *see Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (statement that "we are well positioned to maintain []

*(cont'd)*

18

statements of what Yatsen management purportedly "believe[d]" with respect to long-term profitability and growth (*id.* ¶¶ 108, 110, 118, 127-28) are inactionable, as Plaintiffs fail to plead facts to show that these statements of opinion were both (i) false and (ii) not reasonably held when made. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[A] sincere statement of pure opinion is not an untrue statement of material fact, regardless whether an investor can ultimately prove the belief wrong."); *Steamfitters*, 412 F. Supp. 3d at 364 ("[P]rojections about the future are quintessential opinion statements.").

Moreover, even if any challenged statements were actionable (they are not), Plaintiffs' claims still fail because the allegedly omitted information is immaterial. Even at the pleading stage, a complaint may be dismissed if the alleged omission is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). Here, no reasonable investor would deem the allegedly omitted information—which only tracks sales on two (out of several) online platforms—material.

### B. No Misrepresentation Regarding Sales & Marketing Expenses

As the Complaint itself admits, the Offering Documents clearly disclosed the relevant risks relating to sales and marketing expenses, including the precise risks Plaintiffs claim were omitted. (AC ¶ 71.) For example, Yatsen disclosed that "*[w]e have incurred significant costs for a variety of sales and marketing efforts*" and that "*[i]f we are unable to conduct our sales and marketing efforts in a cost-effective and efficient manner, our results of operations and financial conditions may be materially and adversely affected*." (Ex. B at 31 (emphasis in original).)

Unable to deny these disclosures, Plaintiffs contend that Yatsen failed to disclose that these

---

growth" is puffery), *aff'd sub nom. Cavalier Fundamental Growth Fund v. Sketchers U.S.A., Inc.*, 826 F. App'x 111 (2d Cir. 2020).

risks "were already occurring at the time of the IPO." (AC ¶ 70.) That allegation, however, simply cannot be squared with the actual disclosures. Not only did Yatsen disclose that it already "*ha[d]* incurred significant costs," it disclosed the precise amount invested and warned that such expenses accounted for *62.2% of total net revenues* in the nine months ended September 30, 2020—a significant increase compared to 41.3% in 2019 and 48.7% in 2018. (Ex. B at 31.) It also disclosed that net losses from operations in the nine months ended September 30, 2020 were "*primarily due to the significant increases in our selling and marketing expenses*." (*Id.* at 121-22.) These disclosures foreclose Plaintiffs' claim that Yatsen omitted that such "adverse impacts [] were already occurring at the time of the IPO." (AC ¶ 70; *see id.* ¶ 102.) *See Asay v. Pinduoduo Inc.*, No. 20-1423, 2021 WL 3871269, at \*3 (2d Cir. Aug. 31, 2021) (no material omission where company warned it "*ha[s] been* and may continue to be subject to allegations" and gave "specific[] . . . contemporaneous" information that "suggest[ed] caution (rather than confidence).")

These same disclosures also defeat Plaintiffs' Exchange Act claims based on Yatsen's post-IPO disclosures. As shown above, Yatsen warned that sales and marketing expenses had reached "unprecedented levels by the time of the" IPO. (AC ¶ 102.) Plaintiffs claim that Yatsen failed to warn that such pre-IPO spending was "unsustainable" "due to the Company's mounting losses." (AC ¶¶ 102, 112.) But again, Yatsen disclosed that the significant increase in marketing expenses had caused net losses in the months prior to the IPO. (Ex. B at 121-22.) Contrary to Plaintiffs' claim that Yatsen omitted that reductions in spending could lead to lower growth "given the intense competition in the market" (AC ¶ 132), it disclosed that "competition in the beauty industry is intense" and depends on effective "promotional activities," (Ex. B at 24), and warned that "*[w]e may . . . not be able to continue our existing marketing and branding activities*," which "could negatively impact our business, results of operations and financial condition" (*id*. at 31-32).

20

### C.     No Misrepresentation Regarding New Product Launches

Plaintiffs' claim that the Offering Documents omitted the alleged *post-IPO* slowdown in new product launches is easily dismissed (AC ¶ 68), as it is yet another improper attempt "to plead [their] claims with the benefit of 20/20 hindsight." *Coty*, 2016 WL 1271065 (citation omitted). Plaintiffs admit that Yatsen "launched new products rapidly prior to the IPO." (AC ¶ 57.)[7]

With respect to allegations regarding a post-IPO slowdown in product launches, Plaintiffs again fail to plead facts to support this premise. Plaintiffs' sole support for this claim is unspecified data from China's National Medical Products Administration, which they allege show that "in the month of November 2020, *Perfect Diary* [] registered its lowest number of new SKUs [Stock Keeping Units] since Q12019." (AC ¶ 57.) Plaintiffs fail to plead requisite particulars regarding this data, including the number of SKUs registered, what gets counted, and when and how the data were compiled. *See San Leandro*, 75 F.3d at 813. But even accepting this alleged data *arguendo*, this singular data point for *one month* (*i.e.*, the month of the IPO) and one brand demonstrates nothing about the number of new products launched *after* the IPO, confirming that Plaintiffs' theory is entirely speculative. Moreover, such "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). As Plaintiffs admit, Yatsen acquired three established skincare brands shortly after the IPO, including *Dr. Wu*, *Eve Lom*, and *EANTiM* (AC ¶ 100), and successfully launched several new products under all its brands, including *Perfect*

---

[7]  Plaintiffs also claim the Offering Documents omitted that "customer satisfaction was being undermined by poor product quality." (AC ¶ 68.) Their sole support is a 2023 article (*id.* ¶ 57 n.29) that cites *one* anonymous online complaint in August 2022—*nearly two years after the IPO*. (Ex. O, Daxue Consulting Article.) This hindsight claim should be dismissed. Yatsen also had no duty to disclose one complaint. *See IAC*, 695 F. Supp. 2d at 120 ("Taken alone, a complaint from a customer . . . is trivial information; it does not show [] a business's fortunes are actually declining.") Yatsen warned its "business and reputation may be materially and adversely affected" if it is unable to "maintain the quality of [its] products and services." (Ex. B at 29.)

*Diary* and *Little Ondine* (*id.* ¶¶ 109, 116, 138). In March 2021, four months after the IPO, Yatsen also launched its new cosmetics brand *Pink Bear.* (Ex. P, 2020 Annual Report at 54.)

Plaintiffs also allege that certain post-IPO disclosures relating to R&D expenses omitted that "the level of Yatsen's R&D investment remained well below that of [its] competitors" and could not support rapid rollouts of new products. (AC ¶ 121; *see id.* ¶ 112.) This claim fails, as it is based on an apples-to-oranges comparison of Yatsen's R&D expenses *as a percentage of revenue* and L'Oreal's *year-over-year growth* in R&D expenses in the first half of 2020. (AC ¶ 57.) Yatsen's year-over-year growth in R&D expenses for the nine months ended September 30, 2020 was ***317.35%***, far higher than the 7.1% growth alleged for L'Oreal. (Ex. B at 121.) Because Plaintiffs fail to plead facts showing that Yatsen was unable to rapidly launch new products after the IPO due to low investment in R&D, their misrepresentation claims premised on the alleged omission of these nonexistent facts fail.[8] (AC ¶¶ 108-09, 116, 123, 131 138.)

## II. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs' Exchange Act claims should be dismissed for the independent reason that they fail to plead the requisite "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]." 15 U.S.C. § 78u–4(b)(2)(A). "[T]he inference . . . must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023). Plaintiffs must allege

---

[8] Also, statements of efforts to "transform[] Yatsen into a flourishing global multi-brand beauty group" and that "efforts in product innovation and development [were] paying off" are inactionable puffery. (AC ¶¶ 108, 123.) *See Villare*, 2021 WL 4311749, at *13. The forward-looking statement that investors would "see a higher frequency of launch products" in the second half of 2021 is protected under the PSLRA's "safe harbor" provision, as it was "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i); *see Lopez*, 173 F. Supp. 3d at 25.

facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Here, Plaintiffs do not even **attempt** to plead motive or opportunity. Thus, the strength of the circumstantial allegations of conscious misbehavior "must be correspondingly greater." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Plaintiffs must plead "highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Id.* This requires allegations showing Yatsen's executives either "(1) knew facts or had access to information contradicting their public statements, or (2) failed to review or check information they had a duty to monitor." *Bd. of Trs. of Ft. Lauderdale Gen. Emps Ret. Sys v. Mechel OAO*, 811 F. Supp. 2d 853, 869 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). "[W]here plaintiffs contend defendants had access to contrary facts, they must *specifically identify* the reports or statements containing this information." *Id.* Plaintiffs' conclusory allegations that Yatsen "acted with reckless disregard for the truth" wholly fail to establish a strong inference of scienter. (*See e.g.*, AC ¶ 163.) Plaintiffs plead no facts showing Yatsen's executives knew or had access to information contradicting its disclosures or violated any duty to monitor. This warrants dismissal of the Exchange Act claims.[9]

## III. LACK OF CAUSATION IS APPARENT ON THE FACE OF THE COMPLAINT

Dismissal is also warranted because Plaintiffs fail to plead loss causation, "*i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir.

---

[9] Although the Complaint does not clearly assert "core operations" allegations, to the extent Plaintiffs claim this doctrine applies here (*see* AC ¶¶ 69, 134), such allegations are not "independently sufficient to raise a strong inference" absent other well-pled allegations of scienter, which are absent here. *Shemian v. Rsch. In Motion Ltd.*, No. 11 CIV. 4068 (RJS), 2013 WL 1285779, at *18 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570 F. App'x 32 (2d Cir. 2014).

2005). "[T]o establish loss causation, a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Id.* at 175 (emphasis in original). To plead an Exchange Act claim, Plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which [they] seek[] to recover." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). The Securities Act also provides an affirmative defense that bars recovery for losses not attributable to the alleged misrepresentation. 15 U.S.C. § 77k(e). Dismissal of a Section 11 claim is thus warranted if "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).

The Complaint does not plead that the subject of the alleged omissions caused Plaintiffs' loss. Plaintiffs contend that a series of disclosures beginning on August 26, 2021 "began to reveal the truth" to the market, "causing investors' losses." (AC ¶¶ 141, 144.) However, *none* of these purported corrective disclosures revealed the alleged omissions to the market. Rather, they discussed disappointing financial results or guidance caused by general market conditions, such as "intensifying competition," "a challenging macroeconomic backdrop," and "soft consumer demand." (AC ¶¶ 145-49.) Contrary to Plaintiffs' claim that "Defendant Huang conceded that Yatsen's disappointing [Q4 2021] results were the result of a deceleration in sales of its leading brands that began in 2020," the disclosure says nothing of the sort. (AC ¶ 148.) Rather, as the Complaint itself shows, CEO Huang discussed a *market-wide* deceleration in color cosmetics, and noted that "[g]iven such *market developments*, we evolved our business focus to take a more balanced and holistic approach to sustainable growth." (*Id.*) Because it is apparent on the face of the Complaint that Plaintiffs' losses are unrelated to the alleged misrepresentations, all of Plaintiffs' claims should be dismissed for lack of causation. *Dura*, 544 U.S. at 345 (securities laws

24

do not "provide investors with broad insurance against market losses," but are meant only to "protect them against those economic losses that misrepresentations ***actually cause***").

Moreover, "a price decline before disclosure may not be charged to defendants." *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009). As shown above, Yatsen's share price fell 68.26% ***before*** any alleged corrective disclosure as a result of an industry-wide decline impacting all U.S.-listed Chinese companies, confirming that Plaintiffs' losses were not caused by the alleged omissions. *See Lentell*, 396 F.3d at 174 ("[P]laintiff's claim fails when it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.").

## IV.    PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED

Claims under the Securities Act must be brought within one year of when a plaintiff discovered or should have discovered the alleged misrepresentation or omission. 15 U.S.C. § 77m. The limitations period begins to run after Plaintiff obtain "actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Pew v. Cardarelli*, 164 F. App'x 41, 43 (2d Cir. 2006). Plaintiffs claim that the "truth" was revealed in a series of disclosures in the second half of 2021, the first of which occurred on August 26, 2021. (AC ¶¶ 144, 145.) This Action was not filed until September 23, 2022, more than a year later. (ECF No. 1.) Hence, the Securities Act claims are time-barred.[10]

**CONCLUSION**

For the foregoing separate and independent reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[10] Because Plaintiffs fail to state a primary violation under Section 11 or Section 10(b), their claims under Section 15 and Section 20(a) necessarily fail. *ATSI*, 493 F.3d at 108.

Dated: New York, New York
          December 4, 2023

Respectfully submitted,

*/s/ Robert A. Fumerton*
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000
Fax:      (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants Yatsen Holding Limited, Cogency Global Inc. and Colleen A. DeVries*

*/s/ Brian S. Weinstein\**
DAVIS POLK & WARDWELL LLP
Brian S. Weinstein
Daniel J. Schwartz
Zainab R. Qureshi
450 Lexington Ave
New York, New York 10017
Phone:  (212) 450-4000
Fax:      (212) 701-5800
brian.weinstein@davispolk.com
daniel.schwartz@davispolk.com
zainab.qureshi@davispolk.com

*Counsel for Underwriter Defendants Goldman Sachs (Asia) L.L.C., Morgan Stanley & Co. LLC, China Renaissance Securities (Hong Kong) Limited and Futu Inc.*

\* Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5.