UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

IN RE YATSEN HOLDING LIMITED    :    22-cv-8165 (DEH) (BCM)
SECURITIES LITIGATION              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000

*Counsel for Defendants Yatsen*
*Holding Limited, Cogency Global Inc.*
*and Colleen A. DeVries*

DAVIS POLK & WARDWELL LLP
Brian S. Weinstein
Daniel J. Schwartz
Zainab R. Qureshi
450 Lexington Ave
New York, New York 10017
Phone:  (212) 450-4000

*Counsel for Underwriter Defendants Goldman*
*Sachs (Asia) L.L.C., Morgan Stanley & Co.*
*LLC, China Renaissance Securities (Hong*
*Kong) Limited and Futu Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT..........................................................................................................................2

I.      PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION.....................2

        A.      No Material Misrepresentation Regarding Sales and Revenue ..............................2

        B.      No Material Misrepresentation Regarding Sales & Marketing Expenses ...............7

        C.      No Misrepresentation Regarding New Product Launches......................................7

II.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ...................9

III.    LACK OF CAUSATION IS APPARENT ON THE FACE OF THE COMPLAINT ........9

IV.     PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED.............................10

CONCLUSION......................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Arfa v. Mecox Lane Ltd.*,
  No. 10 Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012) ...........................................4

*Board of Trustees of Ft. Lauderdale General Employees' Retirement System v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011)...................................................................................9

*In re Coty Inc. Securities Litigation*,
  No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).........................4, 5, 6

*In re Dentsply Sirona, Inc. Securities Litigation*,
  665 F. Supp. 3d 255 (E.D.N.Y. 2023) ...................................................................................6

*In re DRDGOLD Ltd. Securities Litigation*,
  472 F. Supp. 2d 562 (S.D.N.Y. 2007)...................................................................................8

*Fadem v. Ford Motor Co.*,
  352 F. Supp. 2d 501 (S.D.N.Y.)..................................................................................5, 7, 10

*I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991)...................................................................................................7

*In re IAC/InterActiveCorp Securities Litigation*,
  478 F. Supp. 2d 574 (S.D.N.Y. 2007)...................................................................................3

*In re IAC/InterActiveCorp Securities Litigation*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010)...........................................................................3, 4, 5

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)...................................................................................................9

*Luo v. Sogou, Inc.*,
  465 F.Supp.3d 393 (S.D.N.Y. 2020)......................................................................................4

*Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017)...................................................................................................10

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996).....................................................................................................5

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
  774 F. Supp. 2d 584 (S.D.N.Y. 2011).................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
     551 U.S. 308 (2007)................................................................................................................9

*In re UBS AG Securities Litigation,*
     No. 07 Civ. 11225(RJS), 2012 WL 4471265 n.18 (S.D.N.Y. Sept. 28, 2012)....................7

*Wang v. Cloopen Group Holding Ltd.,*
     661 F. Supp. 3d 208 (S.D.N.Y. 2023)..........................................................................4, 9

## STATUTES

15 U.S.C. § 77m..................................................................................................................10

15 U.S.C. § 78u–4(b)(1), (2).................................................................................................4

## REGULATIONS

17 C.F.R. § 229.303(b)(2)(ii)................................................................................................6

## PRELIMINARY STATEMENT

The Opposition [1] confirms that Plaintiffs' claims are based on nothing more than conclusory legal assertions unsupported by the well-pled factual allegations.  When viewed in context, Yatsen's disclosures confirm the Company fully and timely disclosed developments to its business and the attendant risks.  The Court should dismiss the Complaint in its entirety with prejudice.

First, Plaintiffs fail to plead a material misstatement or omission.  The Opposition concedes that Yatsen's net revenue *increased* during the relevant periods, defeating any claim that Yatsen failed to disclose a drop in revenue.  Nor can Plaintiffs manufacture a securities claim based on unsourced and incomplete data that Yatsen had no duty to disclose.  The Opposition also concedes that Yatsen disclosed the allegedly omitted facts regarding its marketing expenses, and that, contrary to Plaintiffs' conclusory claims, Yatsen successfully launched numerous new products and increased R&D investment throughout the Class Period.

Second, Plaintiffs fail to plead any facts—let alone particularized ones—to support a strong inference of scienter.  Plaintiffs' inability to plead any facts showing the Exchange Act Defendants knew or had access to information contradicting their public statements is fatal to their claims.

Third, the Opposition confirms lack of loss causation is apparent on the face of the Complaint.  Plaintiffs' own allegations show that their losses were caused by market-wide conditions and other post-IPO developments, not any alleged misstatement or omission.

Finally, Plaintiffs' own cases confirm that their claims are time-barred, as they themselves allege that they learned of the alleged misrepresentations over a year before this Action was filed.

---

[1]  Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 66 ("Opening Brief" or "Br"). "Opposition" or "Opp." refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 73.

## ARGUMENT

### I.     PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION

#### A.     No Material Misrepresentation Regarding Sales and Revenue

The Opposition confirms Plaintiffs' failure to plead that sales of *Perfect Diary* and *Little Ondine* were declining.  As an initial matter, although Plaintiffs refer interchangeably to a decline in total revenue for the two brands (*see* Opp. at 2, 14-15, 19-20) and a decline in sales of the brands *only* on Tmall and Taobao (*see id.* at 1, 4-9, 21), the Opposition does not allege that Yatsen's reported total net revenue for either brand was false (*see id.* at 12; Br. at 15).  Rather, it is undisputed that total net revenue actually ***increased*** year-over-year prior to, and for nearly a year after the IPO,[2] and that the Offering Documents candidly warned that such growth, though positive, was "slower-than-expected."  (AC ¶ 65.)

Hence, despite Plaintiffs' vague pleading, the Opposition confirms that the only questions before this Court are (i) whether Plaintiffs adequately pled a decline in sales of *Perfect Diary* and *Little Ondine* on Tmall/Taobao; and (ii) whether Defendants had any duty to disclose these alleged facts, if they even existed.  The answer to both independently dispositive questions is no.

First, Plaintiffs fail to show that sales of the *Perfect Diary* and *Little Ondine* were, in fact, declining on Tmall/Taobao, as they fail to plead any source for the alleged data.  To plead an Exchange Act claim, "[c]ourts in this district ***require*** plaintiffs to sufficiently identify the sources . . . 'so as to allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained

---

[2]     Plaintiffs do not dispute that prior to the IPO, net revenue from *Perfect Diary* **increased by 39.80%**, while net revenue of *Little Ondine* and *Abby's Choice* **increased by 2,959.79%**, year-over-year.  (*See* Opp. at 12; Br. at 15; Ex. B at 114.)  Plaintiffs also do not dispute that Yatsen's total net revenue continued to **increase for nearly a year after the IPO**, including in FY 2020 and FY 2021, and year-over-year from Q4 2020 to Q3 2021.  (*See* Br. at 9-11; AC ¶¶ 102-140.)

therein.'" *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 589 (S.D.N.Y. 2007) ("*IAC I*"). Even where no specific source is alleged, Plaintiffs must "describe[] the documentary or personal sources . . . with enough detail for a court to determine whether the plaintiff has 'an adequate basis for believing that defendants' statements were false.'" *Id.* at 592. Similarly, under the Securities Act, Plaintiffs' allegations must be pled with "enough detail to be plausible." *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) ("*IAC II*").

Here, "[w]ith seeming indifference to [these] requirement[s], plaintiffs have proffered no facts to support" their claims, *IAC I*, 478 F. Supp. 2d at 589, apart from the conclusory assertion that the ***unsourced*** data is "explicitly described in the AC as reflecting sales revenue and volume for Yatsen's flagship brands on Tmall and Taobao" (Opp. at 12). In other words, Plaintiffs' claim is supported by nothing other than their own *ipse dixit*. "Sketchy at best, these allegations do not provide enough detail to nudge plaintiffs' claims across the line from conceivable to plausible."[3] *IAC II*, 695 F. Supp. 2d at 119. Indeed, the accuracy and reliability of Plaintiffs' data is difficult to square with Yatsen's ***undisputed*** financial results, which show that revenue of its core brands ***increased*** significantly in the months prior to the IPO (Br. at 15; *see* Opp. at 12), and Plaintiffs have made no attempt to explain this discrepancy (Opp. at 13 n.5). *See IAC II*, 695 F. Supp. 2d at

---

[3]  Plaintiffs argue other allegations "corroborat[e] the Tmall/Taobao data." (Opp. at 12-13.) Not so. CEO Huang's general statements of a market-wide deceleration in color cosmetics sales do not even *mention* Yatsen's sales, let alone on Tmall/Taobao. (*Id.*) Plaintiffs' claim that a Sandalwood Advisor's report "confirms the *overall downward trend with respect to global sales* of Yatsen's two largest brands" is again belied by undisputed financial data reporting an ***increase*** in Yatsen's total net revenue during the same period. (*Id.* at 12.) Worse, Sandalwood Advisor's website warns it makes "***no representations as to the accuracy or completeness***" of its data. (https://sandalwoodadvisors.com/disclaimer.) To the extent this data can be credited at all, it only ***confirms*** the success of Yatsen's strategies to diversify its brand portfolio. (AC ¶ 54; *see* Br. at 13.) In any event, such allegations do not relieve Plaintiffs of their burden under Rule 9(b) and the PSLRA to "sufficiently identify the sources" of the Tmall/Taobao data itself, and cannot save their Exchange Act claims. *IAC I*, 478 F. Supp. 2d at 589.

121 (dismissing Section 11 claim where "plaintiffs [were] unable to explain why IAC's travel division performed so well in 2003 and 2004 if, as they say, the travel division was reeling from dissatisfied customers and suppliers" according to confidential sources).

Second, even accepting the Tmall/Taobao numbers *arguendo*, dismissal is still warranted because Defendants had no duty to disclose such granular sales or revenue data.[4]  (*See* Br. at 17-19.)  Plaintiffs fail to plead any facts to show that disclosure of unsourced Tmall/Taobao data was necessary to prevent Yatsen's existing disclosures from being misleading.  Plaintiffs argue that disclosure was required because, otherwise, Yatsen's disclosures "could reasonably be read as conveying a legitimate expectation of continued success[]."[5]  (*Id.*)  But as the Court explained in a factually indistinguishable case, a securities claim cannot be based on "implicit promise[s] of ongoing growth . . . read into Defendants' historical factual statements." *In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *9 (S.D.N.Y. Mar. 29, 2016).  In *Coty*, the Court dismissed a similar theory, where Plaintiffs "fail[ed] to explain how the termination of a *single product line* sold in the United States demonstrate[d] that Defendants' statements that the OPI

---

[4]  Plaintiffs' observation that "at the time of the IPO, Yatsen's products [were] sold mainly through Tmall" misses the point. (Opp. at 13 (alteration in original).)  Incomplete sales data, by definition, cannot show falsity with respect to disclosures of total sales volume or revenue. *See Arfa v. Mecox Lane Ltd.*, No. 10 Civ. 9053, 2012 WL 697155, at *12 (S.D.N.Y. Mar. 5, 2012) (incomplete data cannot render disclosure of "profits related to *all entities*" false), *aff'd*, 504 F. App'x 14 (2d Cir. 2012).

[5]  Plaintiffs fail to "specify" what statements created this allegedly misleading impression, as required to state an Exchange Act claim.  15 U.S.C. § 78u–4(b)(1), (2).  Plaintiffs' failure to identify a misleading statement likewise dooms their Securities Act claims. *See, e.g., Luo v. Sogou, Inc.*, 465 F.Supp.3d 393, 408-10 (S.D.N.Y. 2020).  To the extent they refer to statements of puffery or opinion (*see* Opp. at 14 n.6), those statements are inactionable absent well-pled allegations showing Defendants' knowledge of facts contradicting those statements, which is plainly absent here (*see* Br. at 18).  Plaintiffs' case is in accord. *See Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 229 (S.D.N.Y. 2023) ("Such statements are actionable [only] in **limited circumstances**" where defendant omits contrary facts "'***in the issuer's possession at the time***.'").

brand was expanding *globally* was false or misleading." *Id.* (second emphasis in original).  Here, Plaintiffs cannot explain how the Tmall/Taobao data would have rendered Yatsen's **total** net revenue figures misleading.  (*See* Opp. at 12.)  Indeed, given Plaintiffs' concession that Yatsen's total revenue figures were accurate, disclosure of such minutiae regarding the sales of just *two* (out of seven) brands on just *two* (out of several) platforms "would risk 'bury[ing] the shareholders in an avalanche of trivial information.'"  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 810 (2d Cir. 1996) (alteration in original).[6]

Plaintiffs' claim is also belied by the actual disclosures.  Far from promising continued success, Yatsen tempered positive financial results with candid warnings that its growth rate had slowed[7] (Ex. B at 35-36), that 2021 would "be another loss making year" (Ex. F at 11), and that it was contending with "intensifying competition and rising customer acquisition costs" (Ex. J at 3, 10), "softer-than-expected industry-wide color cosmetic sales," and "a challenging macroeconomic backdrop" (Ex. K at 4, 6).  These disclosures clearly conveyed that continued success was not guaranteed, as "intensifying" adverse conditions would continue.  (Ex. J at 3, 10.)

---

[6]   Plaintiffs argue the Tmall/Taobao data is material as Yatsen's products were "sold mainly through Tmall."  (Opp. at 13 & n.5.)  But this ignores multiple undisputed disclosures that Tmall accounted for a "declining" percentage of sales after the IPO (Ex. L at 15), as Yatsen reported "very fast growth in the GMV [of] Douyin" and other "newly emerging channels" "outside of Tmall"  (AC ¶ 131; Ex. J at 12, 14; Ex. H at 18-19).  Plaintiffs' attempt to dismiss these disclosures as "fact-based disputes" (Opp. at 13-14) fails, as Plaintiffs do not allege that these disclosures—which are referenced in the Complaint—are false.  *See IAC II*, 695 F. Supp. 2d at 121 (undisputed disclosures did not raise "inappropriate factual disput[es]").

[7]   For the first time in the Opposition, Plaintiffs argue the disclosure of "slower-than-expected growth" was itself misleading, as Yatsen attributed it to the COVID-19 pandemic, rather than increasing competition.  (Opp. at 15 n.7.)  But "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."  *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).  Tellingly, Plaintiffs allege no facts in support of this alternative theory.  In any event, Yatsen also warned that "***[t]he beauty industry is highly competitive***" and "***we face vigorous competition from both domestic and international players***."  (Ex. B at 24.)

*Cloopen* is inapposite, as there, defendant reassured investors that despite negative pre-IPO trends in customer retention rates, it expected rates would "remain stable at a relatively high level," while omitting that rates had "plummeted during the last quarter of 2020—a datapoint available to Cloopen well before its" IPO. 661 F. Supp. 3d at 228. Here, Defendants did the opposite, warning of "intensifying" adverse conditions notwithstanding positive financial results. (Ex. B at 35-36.)

Plaintiffs also fail to establish a duty to disclose the unsourced and incomplete Tmall/Taobao data under Item 303. (Opp. at 15-16.) Plaintiffs' assertion that "Tmall data was readily available to Defendants" (*id*. at 15) is insufficient, as their own case confirms that "Item 303 requires a plaintiff to allege that a defendant ***actually*** knew about the trend or uncertainty, and not merely should have known." *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 288–89 (E.D.N.Y. 2023). Plaintiffs have pled no such facts. The Offering Documents' reference to Tmall data from a report published by China Insights Consultancy (the "CIC Report") is irrelevant, as Plaintiffs do not allege that the CIC Report even contained the Tmall/Taobao data at issue. (Opp. at 15-16; *see* Ex. B at 1, 138.) Finally, Plaintiffs fail to show that this data was "reasonably likely to have a material . . . unfavorable impact on" financials. 17 C.F.R. § 229.303(b)(2)(ii). Plaintiffs' sole allegation that "Tmall was the main source of the Company's sales" is insufficient. (Opp. at 16.) Plaintiffs must plead facts showing *the impact* of the purported "trend" on the "broader business" and "financial condition." *Coty*, 2016 WL 1271065, at \*10. The Complaint is devoid of any such allegations. To the contrary, any such inference of a negative impact on the Company's *overall* financials is foreclosed by ***undisputed*** revenue figures that increased throughout the relevant period. (Br. at 15; Ex. B at 114.) *See Coty*, 2016 WL 1271065, at \*10 (dismissing Item 303 claim where assertion of material negative trend was belied by undisputed figures in the Annual Report, which showed net revenue was unchanged from the prior year).

**B.        No Material Misrepresentation Regarding Sales & Marketing Expenses**

Plaintiffs implicitly concede that numerous disclosures cited in the Opening Brief foreclose their claim that Yatsen failed to warn of rising selling and marketing expenses and attendant risks. (*See* Br. at 19-20).  Thus, these claims are easily dismissed.  *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 RJS, 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012) (arguments "not directly address[ed]" in opposition are "conceded . . . by silence"), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

Plaintiffs' *new* allegations appearing for the first time in the Opposition (Opp. at 16-17) should be disregarded.  *See Fadem*, 352 F. Supp. 2d at 516.  In any event, their claim that Yatsen implied that the "rise in Selling Expenses" was "tied to the pandemic" fails because what Yatsen actually said was ***"[w]e also expect to continue to make significant future expenditures . . . in sales and marketing***"—an expectation that was not tied to the pandemic.  (Ex. B at 27-28.)  *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("plaintiff [cannot] evade a properly argued motion to dismiss simply [by ignoring context]").  Plaintiffs' new Item 303 claim fails for the same reasons as their Item 105 claim.[8]  (Opp. at 17.)

**C.        No Misrepresentation Regarding New Product Launches**

Because Plaintiffs concede, as they must, that "Yatsen launched new products" throughout the Class Period (Opp. at 18), they fail to plead a material misstatement regarding new product launches.  Unable to dispute that the November 2020 data from China's National Medical Products

---

[8]   Contrary to Plaintiffs' claim that Defendants waived their response to Plaintiffs' Item 105 claim (Opp. at 17 n.8), the Opening Brief directly addressed this claim, and even quoted the paragraph alleging the Item 105 claim.  (Br. at 20; AC ¶ 70.)  Specifically, Plaintiffs' claim that Yatsen failed to warn of ongoing risks is refuted by the Company's disclosures, which state that it already "***ha[d]*** incurred significant costs," and disclosed precise amounts showing a significant rise in such costs and impact on net losses.  (Br. at 20; *see* Ex. B at 31, 121-22.)

Administration[9] does not support their theory of a ***post-IPO*** drop off in new product launches (Br. at 21), Plaintiffs point to a March 2021 statement that "***some*** . . . new products for existing brands . . . will not be launched until Q2" 2021.  (Ex. F at 10.)  Again, this says nothing about the rate of product launches during the Class Period.  Defendants also disclosed acquisitions of established skincare brands *Galénic, Dr. Wu*, and *Eve Lom*.[10]  (*Id.* at 4.)

Plaintiffs' unsupported allegation of low R&D investment (Opp. at 18) is contradicted not only by Yatsen's undisputed disclosures of successful product launches, but also by undisputed historical figures reporting year-over-year ***increases*** in R&D expenses in ***each quarter*** of the Class Period (Br. at 9-13).  Unable to deny that their comparison with L'Oreal's R&D expenses does not support their claim, (*see* Br. at 22), Plaintiffs cite a ***new*** figure not alleged in the Complaint (*see* Opp. at 18; AC ¶ 57) purportedly showing L'Oreal's R&D expenses in the first half of 2020 were 3.5% of sales, while Yatsen's were 1.3% of revenue for the nine months ended September 30, 2020.  (Opp. at 18.)  Even if the Court were to accept this new fact, this apples-to-oranges comparison does not support Plaintiffs' claim that "Yatsen's R&D investment remained *well below* that of [its] competitors."  (AC ¶ 121.)  More importantly, it does not render Yatsen's disclosures misleading, as Yatsen also disclosed the (obvious) fact that "[m]any . . . multinational consumer goods companies have greater financial, technical or marketing resources."  (Ex. B at 24.)  And again, it shows nothing about Yatsen's post-IPO R&D investments.

---

[9]  Plaintiffs cannot credibly claim they were not required to plead particulars for this data.  (Opp. at 17; *see* Br. at 21.)  To state *any* Exchange Act claim, they must plead particularized facts, including "the who, what, when, where, and how: the first paragraph of any newspaper story." *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 567 (S.D.N.Y. 2007).

[10]  Plaintiffs abandon their claims of a pre-IPO slowdown in new product launches (*see* AC ¶ 57; Br. at 21), poor quality impacting customer satisfaction (*see* AC ¶ 68; Br. at 21 n.7), and other claims based on inactionable puffery and forward-looking statements (Opp. at 22 n.8).

## II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs fail to plead a "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 314 (2007). Their attempt to plead the Defendants' knowledge of facts contradicting their statements fails, as Plaintiffs still do not "*specifically identify* the reports or statements containing" the **unsourced** Tmall/Taobao data. *Bd. of Trs. of Ft. Lauderdale Gen. Emps Ret. Sys v. Mechel OAO*, 811 F. Supp. 2d 853, 869 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). Defendants' citations to Tmall data from *the CIC Report* do not support an inference of knowledge. (*Supra* § I.A.) Nor does Yatsen's DTC model (*see* Opp. at 21), which merely tracks "customer preferences and behavior." (AC ¶ 68.) As Plaintiffs' authorities confirm, where, as here, Plaintiffs allege **no facts** to plead scienter, their core operations allegations add nothing. *See, e.g.*, *Cloopen*, 661 F. Supp. 3d at 237 n.9 (core operations doctrine "cannot establish scienter independently"). Plaintiffs' improper attempt at burden-shifting also fails and serves only to highlight the Complaint's failure to state a claim.[11]

## III.    LACK OF CAUSATION IS APPARENT ON THE FACE OF THE COMPLAINT

Plaintiffs cannot deny their own allegations showing "that the *subject* of the fraudulent statement or omission" was not "the cause of the actual loss." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005). The Complaint itself alleges Plaintiffs' losses were not caused by the *subject* of the alleged omissions, but by disappointing financial results or general market conditions. (Br. at 24.) The Opposition does not refute this—in fact, it cites the same language that Defendants do, but inexplicably claims that these disclosures somehow revealed the allegedly omitted facts. (Opp. at 23-24.) Plaintiffs cannot explain why disclosures of "intensifying

---

[11]    The Complaint makes no effort to allege the knowledge of any of the Underwriter Defendants, who were sued solely on the Section 11 claim.

competition" or market-wide conditions revealed an alleged decline in sales on Tmall/Taobao, or why disappointing financial results *a year after the IPO* revealed this alleged ongoing trend.[12] Worse, Yatsen's disclosure that it would "devote *more* resources to *continue the growth trend* of [its] main brands" undermines Plaintiffs' theory of stalling growth and lack of investment in R&D. (Opp. at 23.)  Negative causation is apparent on the face of the Complaint for the same reasons, defeating Plaintiffs' Securities Act claims.  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,* 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).

## IV.    PLAINTIFFS' SECURITIES ACT CLAIMS ARE TIME-BARRED

Plaintiffs do not dispute that they had to bring their Securities Act claims within one year of discovering the alleged misrepresentations or omission.  15 U.S.C. § 77m.  Their own case makes clear that Plaintiffs need not learn of "every aspect of the alleged violation" to trigger the statute of limitations.  *FHFA v. Nomura Holding Am.*, *Inc*., 873 F.3d 85, 120 (2d Cir. 2017).  Rather, the clock begins to run "when the plaintiff learns sufficient information about [the violation] to . . . plead it in a complaint."  *Id.* at 119.  Because Plaintiffs expressly allege they learned on August 26, 2021—more than a year before this Action was filed—"that sales of *Perfect Diary* and *Little Ondine* were declining and Selling Expenses were unsustainably high"—their Securities Act claims based thereon are time-barred.  (Opp. at 23.)  That Plaintiffs claim to have learned additional information in subsequent disclosures cannot excuse Plaintiffs' untimeliness.[13]

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.

---

[12]   Plaintiffs' attempt to plead a *new* materialization-of-risk theory must be disregarded, as it is not alleged in the Complaint.  *See Fadem*, 352 F. Supp. 2d at 516.

[13]   Because Plaintiffs fail to state a primary violation, their control person claims necessarily fail.

Dated: New York, New York
       March 4, 2024

                              Respectfully submitted,


                              */s/ Robert A. Fumerton*
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              Scott D. Musoff
                              Robert A. Fumerton
                              Michael C. Griffin
                              One Manhattan West
                              New York, New York 10001
                              Phone:  (212) 735-3000
                              Fax:     (212) 735-2000
                              scott.musoff@skadden.com
                              robert.fumerton@skadden.com
                              michael.griffin@skadden.com


                              *Counsel for Defendants Yatsen Holding Limited,
                              Cogency Global Inc. and Colleen A. DeVries*


                              */s/ Brian S. Weinstein\**
                              DAVIS POLK & WARDWELL LLP
                              Brian S. Weinstein
                              Daniel J. Schwartz
                              Zainab R. Qureshi
                              450 Lexington Ave
                              New York, New York 10017
                              Phone:  (212) 450-4000
                              Fax:     (212) 701-5800
                              brian.weinstein@davispolk.com
                              daniel.schwartz@davispolk.com
                              zainab.qureshi@davispolk.com


                              *Counsel for Underwriter Defendants Goldman
                              Sachs (Asia) L.L.C., Morgan Stanley & Co.
                              LLC, China Renaissance Securities (Hong
                              Kong) Limited and Futu Inc.*


* Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5.