UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: YATSEN HOLDING LIMITED SECURITIES LITIGATION | 22 Civ. 8165 (DEH)<br><br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

In this action, Plaintiffs Hin Kit Eric Wong and Max Park sue Yatsen Holding Limited ("Yatsen"), a Chinese cosmetics and skincare company, over losses incurred following Yatsen's initial public offering (the "IPO") of American Depository Shares ("ADS") on the New York Stock Exchange. In addition to Yatsen, Plaintiffs bring claims against six of Yatsen's executives (the "Individual Defendants"), six firms that underwrote the IPO (the "Underwriter Defendants"), Yatsen's designated authorized representative in the United States Cogency Global, Inc. ("Cogency"), and Colleen DeVries, Cogency's Senior Vice President. Plaintiffs allege that the documents issued in connection with Yatsen's IPO and Yatsen's post-IPO public statements failed to disclose information relevant to Yatsen's performance, making these materials misleading. Yatsen, four of the Underwriter Defendants, Cogency, and DeVries (the "Moving Defendants") move to dismiss the First Amended Complaint (the "FAC"), the operative pleading. *See* ECF No. 65. For the reasons given below, the motion is **GRANTED**, though Plaintiffs may seek leave to amend.

## I.    BACKGROUND

The following facts are taken from the FAC and are assumed to be true for purposes of adjudicating Defendants' motion.  *See Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024).[1] Because the FAC relies on and quotes Yatsen's SEC filings, press releases, and statements during earnings calls, the Court considers these materials in adjudicating Moving Defendants' motion.  *See Revitalizing Auto Communities Envtl. Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under [Rule] 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

Yatsen owns several cosmetics and skincare brands, offering a range of products primarily to the Chinese market.  *See* FAC ¶ 44, ECF No. 62.  Its flagship brand is *Perfect Diary*, a mass-market cosmetics brand directed at Gen Z consumers; in 2018 and 2019, *Perfect Diary* represented 100% and 98.3% of Yatsen's sales.  *See id.* ¶¶ 44-45.  Yatsen used a direct-to-consumer ("DTC") business model, selling its *Perfect Diary* products through Alibaba's Tmall and social media platforms with e-commerce capabilities, with transactions through these platforms representing more than 86% of Yatsen's sales at the time of the IPO.  *See id.* ¶¶ 46-48. Yatsen also owns *Little Ondine*, which it acquired in 2019, a brand targeted to consumers with "more sophisticated beauty routines and higher purchasing power."  *Id.* ¶ 44.  *Perfect Diary* and *Little Ondine* are Yatsen's largest brands and represented over 95% of Yatsen's revenues in 2020.  *Id.* ¶ 3.  Yatsen also owns other brands, including *Abby's Choice* and *Galénic*.  *Id.*

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

On November 19, 2020, Defendants filed the final prospectus for Yatsen's IPO with the SEC. *See id.* ¶ 59; Prospectus, Fumerton Decl. Ex. B, ECF No. 68-2 (the "Prospectus").  The Prospectus describes *Perfect Diary* and *Little Ondine* as "fast-growing, successful" brands and touts Yatsen's impressive growth rate from 2018 to 2019.  *See* Prospectus 1-2.  It also reports an approximately 70% increase in gross sales from the first nine months of 2019 to the first nine months of 2020.  *See id.* at 2 ("Our gross sales increased from RMB2.2 billion in the nine months ended September 30, 2019, to RMB3.8 billion in the nine months ended September 30, 2020, representing a growth rate of 70.2% or roughly 16 times the growth rate of the broader China beauty industry . . . .").  It also notes Yatsen's "particularly high sales volumes" during Tmall's 2020 Singles' Day[2] event, immediately prior to the IPO, across *Perfect Diary*, *Little Ondine*, and *Abby's Choice*.  *See id.* at 138.  The Prospectus stresses Yatsen's ability to grow brands more quickly than its peers and its "large and loyal customer base."  *Id.* at 4.  It attributes an increase in net revenues to "the introduction of innovative products and the expansion of product categories offered under . . . *Perfect Diary*," the development of the *Little Ondine* and *Abby's Choice* brands, and diversification of its distribution channels, particularly to include offline ones.  *See id.* at 120.  Finally, while the Prospectus acknowledges that Yatsen's total net revenues had "experienced slower-than-expected growth in the nine months ended September 30, 2020," it states that the growth in those revenues had rebounded in the third quarter of 2020, and that revenues were higher than in the corresponding quarter of 2019.  *See id.* at 119-20.  As part of the IPO, Yatsen sold 59 million ADS, raising $616.9 million.  *See* FAC ¶ 2.

---

[2] According to public sources cited in the FAC, Singles' Day (which falls on November 11) "is the largest shopping day in the world, bigger than Amazon's Prime Day and Black Friday combined."  FAC ¶ 64 n.40.

Following the IPO, on March 11, 2021, Yatsen announced its 2020 financial results and guidance for the first quarter of 2021.  *See id.* ¶ 104.  On an investor call regarding the announcement, Defendant Donghao Yang, Yatsen's CFO, called the company's top-line growth "healthy" and stated that it was "continu[ing] to grow [Yatsen's existing brands]."  *Id.* ¶¶ 108-109, Q4 2020 Earnings Call Transcript, Fumerton Decl. Ex. F at 5, ECF No. 68-6.  He continued that the projected Q1 2021 growth rate of 35% to 40% was not "representative of the growth rate for the full year, " and that Yatsen believed "that the growth rate of [Yatsen's] overall business will start to come back or pick up starting from Q2 compared to Q1."  *Id.* ¶ 110; Q4 2020 Earnings Call Transcript 6.

On May 19, 2021, when Yatsen released its Q1 results, Defendant Jinfeng Huang, Yatsen's Founder, Chairman, and CEO, described the "stellar performance" of *Perfect Diary* and "robust growth from *Little Ondine*, *Abby's Choice*, and other brands under Yatsen's portfolio" in a press release.  *See* Q1 2021 Form 6-K, Fumerton Decl. Ex. G at 4, ECF No. 68-7.  On an earnings call related to the announcement, Huang stated that *Little Ondine* "experienced robust year-over-year growth in the quarter" and that Yatsen's growth would "be more sustainable and more . . . robust in the coming quarters."  Q1 2021 Earnings Call Transcript, Fumerton Decl. Ex. G at 4, 23, ECF No. 68-8.

On August 26, 2021, Yatsen released its Q2 2021 financial results and Q3 2021 guidance. *See* FAC ¶ 122; Q2 2021 Form 6-K, Fumerton Decl. Ex. I, ECF No. 68-9.  Yatsen announced net revenue growth in the mid-range of earlier guidance for Q2, which a statement from Huang attributed to "customer growth stemming from [Yatsen's] brand *Perfect Diary*."  Q2 2021 Form 6-K at 4; *see also id.* (quoting Yang as stating that Q2 2021 was "another quarter of strong growth").  In an earnings call, Huang stated that a projected year-over-year growth of 26% to

4

29% for Q2 and Q3 of 2021 combined "is a more accurate picture of our growth trend" than Q3 year-over-year results alone, and Yang stated that Yatsen still saw "a very healthy growth trend of [its] *Perfect Diary* main brand."  Q2 2021 Earnings Call Transcript, Fumerton Decl. Ex. J at 5-6, 9, ECF No. 68-10.

On November 17, 2021, Yatsen released its Q3 2021 financial results and Q4 2021 guidance.  *See* FAC ¶ 135; Q3 2021 Form 6-K, Fumerton Decl. Ex. K, ECF No. 68-11.  Yatsen reported growth at the low end of its previous guidance, and projected a year-over-year decline of 15% to 20% for Q4 earnings.  *See* Q3 2021 Form 6-K at 6.  In an earnings call, Huang attributed these results to industry-wide headwinds and competition from other brands.  *See* Q3 2021 Earnings Call Transcript, Fumerton Decl. Ex. L at 3, 18, ECF No. 68-12.

Notwithstanding Yatsen's representations regarding the strength of its business throughout this period, problems emerged.  In 2020, Yatsen reported a net loss of RMB 2.69B, compared to a net income of RMB 75.4M in 2019.  *See* 2020 Form 20-F, Fumerton Decl. Ex. P at 93, ECF No. 68-16.  Throughout 2020 and 2021, *Perfect Diary*'s monthly sales volume on the e-commerce platforms Tmall and Taobao[3] declined overall, notwithstanding occasional upticks. *See* FAC ¶¶ 50-52.[4]  *Perfect Diary*'s sales on these platforms through the third quarter of 2020,

---

[3] Tmall is the largest business-to-consumer e-commerce platform in China and is "the main source of [Yatsen's] sales."  FAC ¶¶ 4, 46.  The FAC does not define Taobao, but alleges facts regarding "Tmall/Taobao" sales, and in the parties' briefs, they describe it as an e-commerce platform also owned by Alibaba.  *See* Mem. of L. in Supp't of Mot. to Dismiss ("MTD Br.") 14-15, ECF No. 65 (describing Taobao as an "e-commerce platform" and "just [one] of several platforms where Yatsen conducts online sales"); Opp'n to Mot. to Dismiss ("Opp'n") 4, ECF No. 73 (describing Taobao as "another online marketplace owned by Alibaba").

[4] The FAC attributes this decline in sales to a number of factors: *Perfect Diary* may have reached a ceiling with its target demographic, *see id.* ¶ 55; Yatsen faced increasing domestic and foreign competition, *see id.* ¶ 56; Yatsen failed to invest sufficiently in research and development, *see id.* ¶ 57; and costs associated with offline stores that supplemented Yatsen's online presence increased, *see id.* ¶ 58.

just prior to Yatsen's IPO, were 26% below the corresponding period in 2019, and these trends continued following the IPO through December 2021. *See id.* Revenues on Tmall and Taobao for *Little Ondine* similarly fell. *See id.* ¶ 53. A research report analyzing sales data from Tmall and four additional platforms (but not Taobao) published in January 2022 shows a general downward trajectory in *Perfect Diary* and *Little Ondine* from November 2020 to November 2021. *See id.* ¶ 54. Following the IPO, Yatsen acquired three skincare brands, as part of its efforts to shore up negative revenue growth attributable to problems with *Perfect Diary* and *Little Ondine*. *See* ¶¶ 100-101.

Yatsen also faced the need to reduce its inflated selling and marketing expenses, which had expanded to 72% of its revenue by Q1 2021. *See id.* ¶¶ 56, 113. These expenses were unsustainable, *see id.* ¶¶ 72, 102, 112, and impacted Yatsen's profitability and growth prospects, *see id.* ¶¶ 108, 142(b), prompting Yatsen to work to reduce them, *see id.* ¶ 129. These expenses also hurt Yatsen's ability to invest in product development, which foreseeably caused it to fail to introduce new products in line with its prior pace. *See id.* ¶¶ 102, 142(c).

In response to the Q2 2021 announcement and Q3 2021 guidance described, Yatsen's ADS declined 17.64%. *Id.* ¶ 145. In response to the Q3 2021 announcement and Q4 2021 guidance described, Yatsen's ADS declined 17.93% overnight. *Id.* ¶ 146. Finally, on March 10, 2022, Yatsen announced negative Q4 2021 and 2021 full year results, and issued guidance projecting a 35% to 40% decline in Q1 year-over-year net revenues. *See* Q4 2021 Form 6-K, Fumerton Decl. Ex. M at 7, ECF No. 68-13. In response, Yatsen's ADS declined 39.5%. *See* FAC ¶ 150. In total, in response to Yatsen's announcements, the price of Yatsen's ADS fell, trading as low as $0.39 per ADS, a 96% drop from the $10.50 per ADS asking price at the IPO. *See id.* ¶¶ 73, 151.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). Rule 9(b) requires that "a party . . . state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA "expanded on the Rule 9(b) standard." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). The PSLRA requires that a plaintiff "(1) specify each misleading statement, (2) set forth the facts on which a belief that a statement is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with scienter—the required state of mind." *Set Cap. LLC*, 996 F.3d at 75.

## III.    DISCUSSION

The FAC alleges violations of §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act"), *see* 15 U.S.C. §§ 77k, 77o, and §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), *see* 15 U.S.C. §§ 78j(b), 78t(a). Each of these claims requires a plaintiff

to identify a material misstatement or omission.  Because Plaintiffs fail to do so, Moving

Defendants' motion is **GRANTED** with respect to all claims.

## A.      Material Misrepresentations or Omissions

Plaintiffs bring claims under the Securities Act and the Exchange Act, each of which

require a material misstatement or omission.

"Section 11 of the Securities Act prohibits materially misleading statements or omissions

in registration statements filed with the SEC." *In re Morgan Stanley Inf. Fund Secs. Litig.*, 592

F.3d 347, 358 (2d Cir. 2010).  A plaintiff must show, among other elements, that "the

registration statement contained an untrue statement of a material fact or omitted to state a

material fact required to be stated therein or necessary to make the statements therein not

misleading." *Id.* at 358-59.[5]  "Section 15 [of the Securities Act] imposes joint and several

liability on 'every person who, by or through stock ownership, agency, or otherwise controls any

person liable under' § 11." *In re Lehman Bros. Mortgage-Backed Secs. Litig.*, 650 F.3d 167, 185

(2d Cir. 2011) (quoting 15 U.S.C. § 77*o*(a)).  "To establish § 15 liability, a plaintiff must show a

primary violation of § 11 and control of the primary violator by defendants." *Id.*

Section 10(b) of the Exchange Act and its implementing regulation Rule 10b-5(b) bar the

use of manipulative or deceptive devices when buying or selling securities. *See* 15 U.S.C. §

78j(b); 17 C.F.R. § 240.10b-5(b).  To bring a claim under these provisions, a plaintiff must plead

---

[5] The parties dispute which pleading standard applies to Plaintiffs' claims under the Securities Act, either Rule 8(a)'s permissive requirement for a "short and plain statement" of the claim or Rule 9(b)'s comparatively stringent requirement for "particularity."  *See* Opp'n at 11 n.4. Although Plaintiffs are correct that Rule 9(b) does not apply to § 11 claims that sound in negligence, rather than fraud, *see Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), this distinction does not save their claims.  Irrespective of the applicable pleading standard, the FAC does not establish that any of Yatsen's statements or omissions were untrue or misleading, as discussed *infra*.  The FAC therefore does not offer even a short and plain statement of a material misrepresentation or misleading omission.

a material misstatement or omission of fact, among other elements.  *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021).  Section 20(a) of the Exchange Act imposes liability on control persons, that is, those who control, directly or indirectly, any entity liable under § 10(b).  *See* 15 U.S.C. § 78t(a).  A § 20(a) claim depends on a viable § 10(b) claim.  *See Danske Bank A/S*, 11 F.4th at 98 n.3.

"A statement or omission is material [for purposes of securities fraud] if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act."  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  Federal securities laws "do not create an affirmative duty to disclose any and all material information."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  "In general there is no duty to disclose a fact . . . merely because a reasonable investor would very much like to know that fact."  *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014).  However, "when an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate."  *In re Morgan Stanley*, 592 F.3d at 366.

**B.    The Alleged Misleading Statements or Omissions**

In brief, the FAC alleges that Yatsen failed to adequately disclose the faltering performance of *Perfect Diary* and *Little Ondine*, its flagship brands; failed to disclose the impact of a likely reduction in marketing expenses; failed to disclose the impact of Yatsen's insufficient investment in research and development; and failed to disclose issues with consumer satisfaction. None of these alleged misleading statements or omissions are sufficient to state a claim.

**1.    *Perfect Diary* and *Little Ondine***

First and foremost, the FAC alleges that Yatsen misrepresented the health of *Perfect Diary* and *Little Ondine*, Yatsen's most important brands, characterizing them as healthy and fast-growing. *See, e.g.*, *id.* ¶ 59 (calling the brands "fast-growing" in the Prospectus), ¶ 64 (noting that "[s]ales volume . . . continued to grow rapidly" for *Perfect Diary* and *Little Ondine* around the 2020 Singles' Day event close in time to the IPO), ¶¶ 109-110 (quoting Yang in discussing Q4 2020 results that Yatsen's growth was "healthy," that it was "continu[ing] to grow" *Perfect Diary* and *Little Ondine*, and that Yatsen's growth rate would "start to come back or pick up starting from Q2 compared to Q1"), ¶ 114 (discussing the "stellar performance" of *Perfect Diary* in Q1 2021 results), ¶ 116 (calling *Little Ondine* "a top-selling color cosmetics brand in China's online market"), ¶¶ 123-125, 130 (attributing growth in Q2 2021 to a "steady contribution" from *Perfect Diary* and stating that Yatsen "still see[s] a very healthy growth trend of *Perfect Diary*"), ¶ 137 (describing the "steady performance" of *Perfect Diary* in Q3 2021). The FAC alleges that these statements are misleading because Yatsen failed to disclose negative trends in these brands' performance on the platforms Tmall and Taobao. *See, e.g.*, *id.* ¶¶ 66-67 (alleging negative trends in sales volumes and sales revenues prior to the IPO and during November 2020 on these platforms), ¶ 111 (similar, for Q4 2020), ¶¶ 119-120 (similar, for Q1 2021), ¶¶ 132-133 (similar, for Q2 2021), ¶ 140 (similar, for Q3 2021).

Plaintiff's argument fails because the FAC does not offer a sufficient basis to connect *Perfect Diary* and *Little Ondine*'s declining sales on Tmall and Taobao to their performance as a whole, or to conclude that Yatsen was obligated to disclose sales figures with respect to these specific platforms. The FAC alleges that Tmall is "the largest business-to-consumer . . . e-commerce platform in China" and, at least as of the IPO, "the main source of [Yatsen's] sales." *Id.* ¶¶ 4, 46. It does not offer any allegations regarding the proportion of Yatsen's sales made on

10

Taobao, though the parties' briefing indicates Taobao is another platform with common

ownership with Tmall. *See* MTD Br. 14-15; Opp'n 4. At the same time, the FAC acknowledges

that Yatsen sold its products through channels beyond Tmall and Taobao, including "social

media platforms with e-commerce capabilities" and a "network of offline 'experience stores,'

which were introduced in 2019 and numbered over 200 across more than 90 cities in China" as

of the IPO. FAC ¶ 46. Elsewhere, citing the Prospectus, the FAC alleges that more than 86% of

Yatsen's net revenues came from DTC channels, though it does not allege what proportion (even

roughly) of this comes from Tmall and Taobao specifically, as opposed to other platforms. *Id.*

¶ 48 (citing Prospectus 114-15); *see also* Prospectus 36 ("In both 2019 and the nine months

ended September 30, 2020, a majority of our gross sales were generated through our store on

Tmall."). However, the FAC and its incorporated documents, taken as a whole, suggest that the

portion of Yatsen's revenues attributable to DTC channels, including Tmall and Taobao

specifically, was in flux during the relevant period. *See* Prospectus 114 (providing an 86.8%

figure for the nine-month period ending September 30, 2019, and stating that the proportion of

sales made through DTC channels had fallen for the equivalent period in 2020 to 78.2%); Q3

2021 Earnings Call 15 ("So right now, . . . Tmall is taking around like 40% of the sales for the

total company. We see the percentage is declining.").[6] In short, even accepting the FAC's

---

[6] Plaintiffs argue that Huang's statement on the Q3 2021 Earning Call cannot be accepted for its truth. *See* Opp'n 13. This argument misses the mark: although the Court cannot take judicial notice of Huang's statement for its truth (i.e., the Court cannot simply assume that as of Q3 2021, Tmall accounted for around 40% of Yatsen's sales), the statement illustrates how Plaintiffs have failed to establish that the statements at issue were misleading because they did not adequately connect Tmall and Taobao sales to Yatsen's overall performance. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (allowing a court to take judicial notice of documents incorporated by reference into the complaint); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022).

allegations as true, it is unclear how sales on Tmall and Taobao relate to Yatsen's overall health and outlook.[7]

Thus, the FAC does not establish that Yatsen's statements characterizing *Perfect Diary* and *Little Ondine* as "healthy," "fast-growing," and "steady" were misleading misrepresentations. Yatsen's disclosures—which Plaintiff incorporates by reference into the FAC—indicate that revenues for these brands increased, lending support to these characterizations. *See* FAC ¶ 45 (showing an increase in net revenues prior to the IPO, citing Prospectus at 18). Allegations regarding a subset of these sales made on Tmall and Taobao, without some additional context, do not establish that these statements are misleading. *See In re Coty Inc. Secs. Litig.*, No. 14 Civ. 919, 2016 WL 1271065, at *10 (S.D.N.Y. Mar. 29, 2016) (holding that the failure to allege any facts connecting the termination of a specific product line to a company's overall financial condition precluded a claim under Item 303, 17 C.F.R. § 229.303); *Arfa v. Mecox Lane Ltd.*, No. 10 Civ. 9053, 2012 WL 697155, at *12 (S.D.N.Y. Mar. 5, 2012) (rejecting claim based on a discrepancy between financial reporting of a company overall versus only its Chinese subsidiaries, in the absence of allegations explaining why the discrepancy was untrue or misleading).

Further, the FAC does not allege facts that establish that Yatsen had a duty to disclose its Tmall and Taobao sales figures specifically. "[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *Dalberth v. Xerox Corp.*, 766 F.3d 172, 183 (2d Cir. 2014). "This duty may arise when a corporate insider

---

[7] Plaintiffs also point to research data from Sandalwood Advisors showing sales of *Perfect Diary* and *Little Ondine* on Tmall and four other platforms (but not Taobao) dropped from November 2020. *See* FAC ¶ 54. This data does not supply the missing connection between Tmall and Taobao data and Yatsen's performance; if anything, it instead offers a different subset of Yatsen's sales (for only some of the relevant time period).

trades on confidential information, a statute or regulation requires disclosure, or a statement is made that would be inaccurate, incomplete, or misleading without further context." *In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021).  "[T]here is no duty to update vague statements of optimism or expressions of opinion." *Id.*  Again, the FAC does not connect *Perfect Diary* and *Little Ondine*'s performance on Tmall and Taobao to Yatsen's overall financial health, meaning the FAC does not establish that Yatsen's disclosures are inaccurate or incomplete without this information.

It is for this reason that Plaintiffs' Item 303 argument fails: that provision requires companies to disclose "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable and unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(b)(2)(ii).  The FAC does not sufficiently connect how trends in *Perfect Diary* and *Little Ondine*'s sales on Tmall and Taobao had or were likely to have a material impact on Yatsen's sales, revenues, or income.

Without context (or even allegations) regarding the role of declining *Perfect Diary* and *Little Ondine* sales on Tmall and Taobao to Yatsen's overall health, the FAC does not provide a basis to conclude that Yatsen's representations regarding these brands were misleading or that information at this level of granularity was necessary to make those representations not misleading.  Accordingly, Yatsen's representations (and omissions) regarding the health of *Perfect Diary* or *Little Ondine* cannot support a claim.

### 2.      Sales and Marketing Expenses

Next, the FAC alleges that Yatsen's disclosures regarding its marketing expenses were misleading, because they failed to warn investors of inevitable cuts in marketing and the likely impact of these cuts on Yatsen's business.  *See, e.g.*, FAC ¶ 72 (alleging that Yatsen failed to

disclose in the Prospectus that spending on marketing expenses "had already become untenable" by the time of the IPO and that "reductions in selling and marketing expenditures were inevitable," creating a duty to disclose "the likely impacts of a reduction of selling and marketing expenses on Yatsen's business"), ¶ 112 (alleging that Yatsen failed to disclose in its Q4 2020 results that Yatsen's sales and marketing expenditures were not sustainable and that Yatsen misattributed the results to the timing of product launches), ¶¶ 129, 132 (alleging that a statement in Yatsen's Q2 2021 earnings call regarding a reduction in marketing expenses was misleading because it failed to disclose that the reduction "portended lower growth for the brand going forward given the intense competition in the market").

These statements are not misleading. As to the statements at the IPO and after Q4 2020, Yatsen sufficiently disclosed the risks in the filings in question. *See* Prospectus 31 ("We have incurred significant costs for a variety of sales and marketing efforts . . . . If we are unable to conduct our sales and marketing efforts in a cost-effective and efficient manner, our results of operations and financial conditions may be materially and adversely affected."); Q4 2020 Earnings Call (quoting Yang disclosing that "profitability was impacted during the quarter as a result of increased selling and marketing expenses"). These statements "taken together and in context, would [not] have misled a reasonable investor" in the way Plaintiffs allege. *Rombach*, 355 F.3d at 172 n.7.

As to Plaintiffs' argument that Yatsen failed to disclose that a reduction in marketing expenses portended lower growth, the FAC does not allege sufficient facts to suggest that Yatsen was aware that its reduction in marketing expenses, in and of itself, would cause a slowdown in growth. In the relevant earnings call, Yang stated that although selling and marketing expenses rose from 62.7% to 63.8% of total net revenue, they declined as a percentage of total net revenue

on a non-GAAP basis (i.e., excluding expenses related to share-based compensation and amortization of intangible assets) to 51.4%, down from 71% in the prior quarter and 62.7% in the same period in the previous year.  *See* Q2 2021 Earnings Call 7.  He then went on to state that this decrease "was a result of our focus on improving the ROI on our selling and marketing expenses."  *Id.*  The FAC does not provide a sufficient basis to conclude that this statement required additional disclosure to not be misleading in context.  *See Rombach*, 355 F.3d at 172 n.7.

### 3.    Research and Development

Third, the FAC alleges that Yatsen failed to disclose that it had insufficiently invested in research and development, and that this failure would impact its growth.  *See* FAC ¶ 68 (failure to disclose in the Prospectus that "fewer and less rapid new product launches were on the horizon in the months following the IPO which would continue to undermine growth"), ¶ 112 (failure to disclose in Q4 2020 results that "growth had been, and going forward would continue to be, adversely impacted by Yatsen's inability to timely launch new, quality products due to its insufficient investment in R&D"), ¶¶ 117, 121 (arguing that a statement that R&D was almost 2% of net revenue was misleading because "Yatsen's R&D investment remained well below that of the Company's competitors and was insufficient to meaningfully change the rate or quality of new product launches").

As with the marketing expenses, the Prospectus adequately discloses the risks the FAC alleges that Yatsen omitted.  *See* Prospectus 23 ("[Yatsen] may be unable to introduce new products . . . .").  In any event, in support of its conclusion that Yatsen's R&D expenditures were insufficient, the FAC compares Yatsen's *absolute* R&D expenses as a percentage of revenue to a single competitor's *change* in R&D expenses year-over-year.  *See* FAC ¶ 57.  It also notes that in

the month of November 2020, *Perfect Diary* registered its lowest number of new products for any month since Q1 2019. *See id.* These isolated, contextless datapoints are insufficient to render any of Yatsen's statements about its R&D investment misleading or to establish that Yatsen was obligated to disclose anything related to these expenses.

### 4.    Customer Satisfaction

Finally, the FAC also alleges that Yatsen failed to disclose customer satisfaction issues over product quality, which were adversely affecting sales volumes and repurchase rates. *See id.* ¶ 68 (statements regarding a "large and loyal customer base" were misleading, because they did not disclose declining customer satisfaction due to poor product quality). As Moving Defendants note, the sole basis for this allegation is a single complaint filed in August 2022, *see* MTD Br. 21 n.7, which does not render statements in the Prospectus about a "large and loyal customer base" materially misleading.

\*        \*        \*

For the reasons given below, Moving Defendants' motion to dismiss is **GRANTED.**

In their opposition, Plaintiffs seek leave to further amend in the event that Moving Defendants' motion is granted. *See* Opp'n 25. Plaintiffs may file a proposed Second Amended Complaint ("SAC") that addresses the deficiencies outlined in this order by **August 16, 2024**. Plaintiffs shall append any proposed SAC to a letter motion, not to exceed five pages, that explains how their proposed amendments address the deficiencies identified in this opinion. If such a letter motion is filed, Defendants will have a chance to respond.

To date, Plaintiffs have not filed proof of service of Individual Defendants and two of the Underwriter Defendants (China International Capital Corporation Hong Kong Securities Limited and Tiger Brokers (NZ) Limited). In addition, Hillhouse Capital, an additional Underwriter

Defendant, has been served but has not appeared. *See* ECF No. 51. If Plaintiffs file a proposed

SAC, they shall either remove the unserved Defendants in the proposed SAC or explain their

efforts to effectuate service on the absent Defendants, to the extent Plaintiffs wish to maintain

their claims against those Defendants, in the letter in support of amendment.

If no proposed SAC is filed, all claims shall be dismissed with prejudice.

The Clerk of Court is respectfully directed to close the motion at ECF No. 65.

SO ORDERED.

Dated: July 22, 2024
New York, New York

_____
DALE E. HO
United States District Judge