

DEBORAH + CLARK-WEINTRAUB

+ VIA ECF+

August 30, 2024

Hon. Dale E. Ho
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:   *In re Yatsen Holding Limited Securities Litigation*, No. 1:22-cv-08165

Dear Judge Ho:

We represent the Plaintiffs in the above-referenced action (the "Action").  We submit this letter-motion for leave to file a second amended complaint in the Action pursuant to the Court's July 22, 2024 Opinion and Order ("Opinion," ECF No. 75 at 16.)  The Proposed Second Amended Complaint (the "Proposed Complaint") is attached hereto as Exhibit A and an electronically generated redline comparison against the prior complaint is attached hereto as Exhibit B.

### *Background*

This is a securities class action asserting claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Yatsen Holding Limited ("Yatsen" or the "Company"), a China-based company that manufactures and sells color cosmetics and skincare products, typically directly to consumers.  (¶2.)[1]  On November 19, 2020, pursuant to a Form F-1 Registration Statement and incorporated Prospectus (the "Offering Documents"), Yatsen sold 59 million ADS to investors at $10.50 per share in its IPO, which raised $616.9 million.  (*Id.*)  At the time of the IPO, Yatsen's main brand was the color cosmetics line *Perfect Diary*, which accounted for 100%, 98.3%, and 82.1% of Yatsen's sales in 2018, 2019, and for the nine months ended September 30, 2020, respectively.  (¶37.) Due to *Perfect Diary*'s success Yatsen experienced significant pre-IPO growth.  The Company attributed its rapid growth to its direct-to-consumer ("DTC") business model, which focused on selling products directly to customers online and, to a lesser extent starting in 2019, in "experience stores."  (¶38.)  Yatsen's primary DTC sales channels were Alibaba-owned Tmall and Taobao, the two largest e-commerce

---

[1] References in this letter to "¶_" refer to paragraphs of the Proposed Complaint.

Hon. Dale E. Ho
August 30, 2024
Page 2

platforms in China by sales revenue at the time of the IPO.  (¶42.)  Thus, sales on Tmall and Taobao were singularly important to Yatsen's bottom line and future growth.

Yatsen's pitch for the IPO was simple:  It was purportedly "a leader in the rapidly growing China beauty market" as evidenced by its "fast-growing, successful color cosmetics and skincare brands," including *Perfect Diary*.  (¶89.)  In support of this claim, the Offering Documents touted Yatsen's "substantial growth" and emphasized the Company's "large and loyal customer base," which purportedly had "continu[ed] to improve" as Yatsen "strength[ened] and [grew] [its] brand and product portfolio."  (¶93.)  And, as evidence of Yatsen's purportedly "proven ability to launch and grow successful brands more rapidly than [its] peers," the Offering Documents touted the rapid growth in sales from *Perfect Diary* "on Tmall" since its launch.  (¶92.)

After the IPO, Yatsen continued to tout the growth of *Perfect Diary*, as well as another brand, *Little Ondine*.  (¶¶128-66.)  But Yatsen's post-IPO sales performance was disappointing, and its stock price declined as news of its problems trickled out.  (¶170-77.)  The truth was finally revealed on March 10, 2022, when Yatsen released its 4Q-2021 and full-year 2021 financial results, showing that "total net revenue from color cosmetic brands, including *Perfect Diary*, *Little Ondine*" and others "declined by 33.9% year-over-year in the fourth quarter."  (¶173.)  Overall, Yatsen reported a 22.1% decline in 4Q-2021 total net revenue and a 17.2% drop in gross sales.  During an earnings call that same day, Yatsen's CEO conceded the disappointing 4Q-2021 results (and projected further revenue declines in 1Q-2022) were due to a "color cosmetics market [that] started to decelerate in 2020" all while "competition also intensified among our domestic and global players."  (*Id*.)  Huang further admitted that Yatsen's attempts to mitigate these trends "began last year."  (*Id*.)  As a result, Yatsen was "dramatically" cutting selling and marketing expenses and "short-term sales [would] be affected significantly."  (¶175.)

In the Opinion, the Court dismissed Plaintiffs' claims alleging that Yatsen misrepresented the health of its principal brand, *Perfect Diary*, as well as another brand, *Little Ondine*.  (Opinion at 9-13.)  The Court reasoned that Plaintiffs' allegations that Yatsen failed to disclose negative trends in those brands' performance on the Tmall and Taobao platforms was insufficient, because Plaintiffs did not provide a sufficient basis to connect those brands' declining sales on those platforms to the sales of those brands as a whole or to Yatsen's overall financial health.  (Opinion at 10, 13.)  The Court stated that "[a]llegations regarding a subset of" sales of those brands on Tmall and Taobao "without some additional context, do not establish" that Yatsen's statements were false and misleading and that Plaintiffs failed to "connect *Perfect Diary* and *Little Ondine*'s performance on Tmall and Taobao to Yatsen's overall financial health, meaning the FAC does not establish that Yatsen's disclosures are inaccurate or incomplete without this information."  (Opinion at 12, 13.)  For the same reasons, the Court also dismissed Plaintiffs' claim under Item 303.  (Opinion at 13.)[2]

***The Court Should Grant Plaintiffs Leave to File the Proposed Second Amended Class Action Complaint***.  At the time of Yatsen's November 2020 IPO, *Perfect Diary* was its keystone brand, responsible for more than 80% of the Company's revenue and sales in the first nine months

---

[2] The Opinion also dismissed claims challenging statements about Yatsen's sales and marketing expenses, research and development, and customer satisfaction.  (Opinion at 13-16.)  The Proposed Complaint omits claims challenging those statements.

Hon. Dale E. Ho
August 30, 2024
Page 3

of 2020, and Yatsen explicitly represented in its Offering Documents to prospective investors that sales from *Perfect Diary* would continue to account for a majority of its revenue "in the foreseeable future." (¶37.)[3] The Proposed Complaint includes enhanced allegations about the quantity and importance of sales of *Perfect Diary* on Tmall and Taobao. Specifically, based on combined sales data from Tmall and Taobao, sales of *Perfect Diary* in the first quarter of 2020 represented 57% of Yatsen's *overall* revenue. (¶44.) In the second quarter of 2020, sales of *Perfect Diary* on those platforms accounted for 52% of Yatsen's *overall* revenue. (¶45.) And for the first three quarters of 2020 combined, sales of *Perfect Diary* on those platforms made up approximately 50% of Yatsen's *overall* total revenue for that time period. (¶46.) In addition, the Prospectus emphasized that Yatsen's products are "sold mainly through Tmall" and Yatsen's Annual Report on Form 20-F for 2020 stated that a majority of its sales in 2019 and 2020 were on Tmall. (¶47.) In sum, Tmall and Taobao were the most important sales channels for Yatsen's most important product in the period leading up to the IPO.

The Proposed Complaint also includes enhanced allegations making clear that by the time of the IPO, sales of *Perfect Diary* on Tmall and Taobao had stalled and were, in fact, declining. Specifically, the Proposed Complaint includes detailed analysis of the sales performance – both volume and revenue – of *Perfect Diary* on Tmall and Taobao on both a month-to-month and year-over-year basis. (¶¶49-70.) This data shows that from March 2020 through September 2020 (the last month for which financial results were included in the Offering Documents), sales volume of *Perfect Diary* on Tmall and Taobao declined each month year-over-year versus sales volume in 2019. (¶70.) In addition, from March 2020 through September 2020, with the exception of April 2020, which was essentially flat, revenue from sales of *Perfect Diary* on those platforms declined each month year-over-year versus sales revenue in 2019. (*Id.*)

In addition, the Proposed Complaint includes enhanced allegations about the *reasons* for the decline in *Perfect Diary* sales on Tmall and Taobao. (¶¶74-78, 82-84.) These allegations show that *Perfect Diary* sales were declining because of fundamental defects with the brand – including market saturation, poor brand identity, quality problems, and increased competition – and that the sales decline on Tmall and Taobao was unlikely temporary and could not be brushed off by Yatsen as inconsequential. Moreover, these deep-seated problems with *Perfect Diary* make it unlikely that, as Defendants have previously contended, there were no issues with sales of *Perfect Diary* before the IPO because they were simply migrating to other sales channels.

The allegations in the Proposed Complaint address the Court's analysis in its Opinion and sufficiently plead that (i) Yatsen's statements about Perfect Diary's growth were false and misleading; and (ii) that the declining sales of *Perfect Diary* were required to be disclosed in the Offering Documents under SEC Items 105 and 303. Second Circuit law confirms the sufficiency of the allegations in the Proposed Complaint. For example, in *Litwin v. Blackstone Group LP*, the Second Circuit held that plaintiffs had pled a violation of Item 303 based on a downward trend in real estate prices that was reasonably likely to have a material effect on Blackstone's financial condition. 634 F.3d 706, 721-23 (2d Cir. 2011). In so doing, the court found that real estate investments played a "significant role" in Blackstone's business as they comprised 22.6% of the

---

[3] The Proposed Complaint narrows Plaintiffs' claims regarding *Little Ondine* to only Exchange Act claims based on post-IPO statements.

Hon. Dale E. Ho
August 30, 2024
Page 4

company's assets under management ["AUM"] and thus a reasonable investor "may well have wanted to know of any potentially adverse trends concerning a segment that constituted nearly a quarter of Blackstone's total [AUM]." *Id.* at 722. Likewise, in *Panther Partners Inc. v. Ikanos Communications, Inc.*, the Second Circuit held that a potential defect in products sold to the company's two key customers was required to be disclosed because in addition to the potential losses from the product defects themselves, the sales "jeopardized [the company's] relationship with clients who at that time accounted for the vast majority of its revenues." 681 F.3d 114, 121 (2d Cir. 2012).

Similarly, in *Wang v. Cloopen Group Holding Ltd.*, the court upheld allegations that declines in customer retention and increases in customer nonpayment leading up to an IPO rendered the company's statements about those subjects false and misleading and were required to be disclosed under Items 303 and 105. 661 F. Supp. 3d 208, 236 (S.D.N.Y. 2023). The court reasoned that the omission of declining customer retention made statements about that subject misleading, because those statements "would have left investors with an impression of strong and stable results in [the company's] customer retention, a critical component of [the company's] business model, when in fact" customer retention had "plummeted" before the IPO. *Id.* at 228. Similarly, the omission of an increase in customer nonpayment rendered statements about that subject misleading given the company's "own representations that revenues generated from existing customers were a crucial component of its business." *Id.* at 231. Moreover, the court sustained the Item 303 and 105 claims because the company's disclosures "left investors without any insight" into the "material acceleration" of negative trends and the evaluation of the risk of the offering, given the customer retention and nonpayment data known as of the IPO. *Id.* at 232.

The allegations in the Proposed Complaint about the importance of sales of *Perfect Diary* on Tmall and Taobao to Yatsen at the time of the IPO – that those sales comprised about half of Yatsen's total revenue in the period leading up to the IPO and, as Yatsen itself acknowledged in its Offering Documents, were the single biggest sales channels for the Company's most important product – and the fact that sales of *Perfect Diary* on Tmall and Taobao had stalled and were in fact declining at the time of the IPO, establish that Yatsen's statements about *Perfect Diary*'s brand health were false and misleading and that the Company was required to disclose those sales trends in the Offering Documents. As in *Litwin*, given the allegations in the Proposed Complaint, sales of *Perfect Diary* on Tmall and Taobao played a "significant role" in Yatsen's business at the time of the IPO. Moreover, as in *Panther Partners*, declining sales of Yatsen's most important brand on the platforms that generated the majority of its revenue seriously jeopardized Yatsen's financial prospects. And, as in *Cloopen*, Yatsen's failure to apprise investors of the negative trend "left investors without any insight" into the crucial downward trajectory affecting the Company's flagship product. In addition, like in *Cloopen*, Yatsen's failure to disclose that sales of *Perfect Diary* had stalled and were in decline leading into the IPO left investors with the wrong impression that the Company's main brand, which was expected to power the Company's future growth, had "strong and stable results" – as Yatsen repeatedly touted in the Offering Documents.

The allegations in the Proposed Complaint also distinguish this case from the decisions cited in the Opinion. In *In re Coty Inc. Securities Litigation*, the court rejected allegations that defendant's termination of a single product line constituted a material trend under Item 303, where plaintiffs did not allege "any facts about the significance of this line to [the company's] broader business or that

Hon. Dale E. Ho
August 30, 2024
Page 5

the termination of th[e] product line affected [the company's] financial condition" before the IPO. No. 14-CV-919, 2016 WL 1271065, at \*10 (S.D.N.Y. Mar. 29, 2016). Unlike *Coty*, as explained above, the Proposed Complaint includes allegations establishing the importance to Yatsen of sales of *Perfect Diary* on Tmall and Taobao. Similarly, in *Arfa v. Mecox Lane Ltd.*, plaintiffs alleged that inconsistencies between profits for a company's Chinese subsidiaries provided to the Chinese government cast doubt on the accuracy of the company's disclosures and evidenced the company's volatility. No. 10 CIV. 9053, 2012 WL 697155, at \*12 (S.D.N.Y. Mar. 5, 2012), *aff'd*, 504 F. App'x 14 (2d Cir. 2012). The Proposed Complaint does not attack Yatsen's reported financials, but rather alleges facts showing a concrete negative sales trend affecting the Company's largest sales channel for its core brand leading up to the IPO and that those declining sales were caused by numerous factors. The importance to Yatsen's growth of *Perfect Diary* sales, and especially sales of *Perfect Diary* on Tmall and Taobao, distinguishes the allegations here from the nebulous volatility allegations in *Arfa*.

Defendants have previously argued that the fact that *Perfect Diary* net revenues increased year-over-year from the first nine months of 2019 to the first nine months of 2020 precludes Plaintiffs' claims. But that fact does not contradict that *Perfect Diary* growth had stalled and was indeed declining before the IPO on its main sales channel, representing a clear threat to Yatsen's core brand and its business prospects. Moreover, given the many problems that *Perfect Diary* was experiencing as of the IPO, that sales trend showed an existential threat to the brand and cannot be dismissed as a mere blip in *Perfect Diary*'s trajectory. Ultimately, the meaning of the year-over-year sales increase is an issue of fact not appropriate for resolution at the pleading stage.

***Service of Process.*** In the Opinion, the Court stated that Plaintiffs had not filed proof of service for several defendants named in the prior complaint and that Plaintiffs "shall either remove the unserved Defendants in the Proposed Complaint or explain their efforts to effectuate service on the absent Defendants, to the extent Plaintiffs wish to maintain their claims against those Defendants." (Opinion at 16-17.) The Proposed Complaint removes all the parties previously named as defendants for whom proof of service was not filed except for Yatsen's CEO, Jinfeng Huang, who signed the Registration Statement and made many of the statements challenged as false and misleading under Section 10(b). Plaintiffs respectfully request that the Court permit them to name Huang as a defendant and to attempt to serve him via the Hague Convention and/or to make a motion for alternative service under Fed. R. Civ. P. 4(f)(3). As alleged in the Proposed Complaint, Plaintiffs have been unable to locate Huang's home address, but believe that he resides in China. In addition, Plaintiffs asked Yatsen's counsel to accept service of the prior complaint on Huang's behalf, but that request was denied. Finally, Huang has had actual notice of this action at least since it was disclosed in Yatsen's Annual Report on Form 20-F on April 26, 2023.

Under these circumstances, Plaintiffs should be permitted to name Huang as a defendant and to attempt service via the Hague Convention or to file a motion for substitute service. *See*, *e.g.*, *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-CV-00744, 2024 WL 2317715, at \*2, \*5 (S.D.N.Y. May 22, 2024) (permitting substitute service on China-based defendants where plaintiffs took "reasonable steps" to effect service including, as here, attempting to locate their addresses and unsuccessfully asking company counsel to accept service on their behalf).

Hon. Dale E. Ho
August 30, 2024
Page 6

Respectfully submitted,

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*/s/ Deborah Clark-Weintraub*
Deborah Clark-Weintraub
Thomas L. Laughlin, IV
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
dweintraub@scott-scott.com
tlaughlin@scott-scott.com

Jacob B. Lieberman
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432

*Attorneys for Lead Plaintiffs and Lead Counsel for the Class*

**THE SHALL LAW FIRM**
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-9182
brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs*