UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: YATSEN HOLDING LIMITED
SECURITIES LITIGATION

22 Civ. 8165 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

    Before the Court is Plaintiffs Hin Kit Eric Wong and Max Park's Motion for Leave to File a Second Amended Complaint. *See* Pls.' Aug. 30, 2024 Letter Mot. ("Pls.' Mot."), ECF No. 78. Plaintiffs' suit concerns losses they incurred following Defendant Yatsen Holding Limited's initial public offering ("IPO") on the New York Stock Exchange. Defendants are Yatsen, a Chinese cosmetics and skincare company, and various individuals and entities with which Yatsen is associated, including its executives, designated authorized representative in the United States, and the six firms that underwrote its IPO.

    Plaintiffs' current Motion comes after this Court issued an order granting several Defendants' motion to dismiss (the "dismissal order") the First Amended Complaint ("FAC"), ECF No. 62.[1] *See* Op. & Order ("Op.") at 16, ECF No. 75. The Court granted dismissal because Plaintiffs failed to sufficiently plead material misrepresentation or omission, a required element of the two statutes under which this action was brought, the Securities Act of 1933 and Securities Exchange Act of 1934. *Id.* at 7-8. However, the Court dismissed without prejudice, allowing Plaintiffs to file a proposed Second Amended Complaint ("PSAC") that corrected the deficiencies

---

[1] The motion to dismiss, ECF No. 65, was brought by Yatsen; four of the six firms that underwrote Yatsen's IPO; Cogency Global Inc., Yatsen's designated authorized representative in the United States; and Colleen DeVries, Cogency's Senior Vice President, *id.* at 1. The Court referred to these Defendants as the "Moving Defendants" in its opinion granting dismissal. *See* ECF No. 75 at 1. Because these same Defendants oppose Plaintiff's current Motion, *see* ECF No. 80 at 1, the Court will refer to them as "Moving Defendants" in this Opinion and Order as well.

described in the dismissal opinion. *Id.* at 16. For the reasons explained below—namely, because the PSAC fails to identify a material misstatement or omission—Plaintiffs' Motion is **DENIED**.

## BACKGROUND

The Court presumes the parties' familiarity with the factual background of this case, which it described in the dismissal order. Therefore, below, the Court includes only the facts necessary to resolve the pending Motion.[2]

Plaintiffs filed the FAC on October 4, 2023, bringing claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77*k*, 77*o*, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a). The FAC alleged Yatsen violated the Securities Act and the Exchange Act by issuing documents that misrepresented and/or omitted pertinent information regarding Yatsen's commercial performance prior to, at the time of, and after its IPO. *See* FAC ¶¶ 74-121. More specifically, and most relevantly for the purposes of the current Motion, Plaintiffs argued Yatsen misrepresented the health of *Perfect Diary* and *Little Ondine*, its flagship brands, by characterizing them as "healthy," "fast-growing," and "steady" when, in fact, these brands' sales were faltering on Tmall and Taobao, two direct-to-consumer ("DTC") e-commerce platforms on which Yatsen sells its products. *See id.* ¶¶ 59, 66-67, 109-111, 119-20, 132-33, 137, 140. In addition to describing the aforementioned positive characterizations as misrepresentations, the FAC also argues Yatsen had a duty to disclose *Perfect Diary* and *Little Ondine* sales figures for Tmall and Taobao given how

---

[2] The FAC presented four theories of misrepresentation and/or omission, making arguments regarding Yatsen's sales on direct-to-consumer ("DTC") platforms, sales and marketing expenses, research and development budget, and customer satisfaction. The PSAC, however, only pleads one theory of misrepresentation, which pertains to Yatsen's sales on DTC platforms. *See* Pls.' Mot. at 2 n.2; Defs.' Letter Opposing Pls.' Mot. at 3, ECF No. 80. Therefore, here, the Court describes its prior holding only with respect to the DTC theory.

significant these products' sales on the DTC platforms were to Yatsen's overall financial health. *See* FAC ¶¶ 74-121.

On December 4, 2023, the Moving Defendants filed a joint motion to dismiss under Rules 8(a), 9(b) and 12(b)(6),[3] and under Section 101(b) of the Private Securities Litigation Reform Act ("PSLRA") of 1995, 15 U.S.C. § 78u-4(b)(2). They argued, *inter alia*, that Plaintiffs failed to plead "any material misrepresentation or omission in [Yatsen's] Offering Documents or in Yatsen's subsequent financial reporting" as required by both the Securities Act and Exchange Act. Mem. of L. in Supp. of Defs.' Mot. to Dismiss the Am. Compl. at 1, 14, ECF No. 66. The Court granted the Moving Defendants' motion on July 22, 2024. *See* Op. at 16. It held that, because *Perfect Diary* and *Little Ondine*'s revenues increased during the relevant period, characterizing the brands as "healthy," "fast-growing," and "steady" was not necessarily misleading. *See id.* at 12. The Court also held that Plaintiffs' theory that Yatsen failed to adequately disclose *Perfect Diary* and *Little Ondine*'s faltering performance on Tmall and Taobao was insufficient to substantiate a material misrepresentation or omission claim, because, *inter alia*, "the FAC d[id] not offer a sufficient basis to connect *Perfect Diary* and *Little Ondine*'s declining sales on Tmall and Taobao to their performance as a whole, or to conclude that Yatsen was obligated to disclose sales figures with respect to these specific platforms." *Id.* at 10, 10-13. Because these deficiencies were potentially curable, the Court allowed Plaintiffs to seek leave to amend. *See id.* 16-17.

On August 30, 2024, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, attaching the PSAC as an exhibit. *See* Pls.' Mot. The Moving Defendants filed their Opposition on September 11, 2024, arguing that Plaintiffs' proposed amendments are futile

---

[3] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

3

because the PSAC fails to cure deficiencies outlined in the dismissal order and fails to state a claim under Rule 12(b)(6). *See* Defs.' Letter Opposing Pls.' Mot. ("Opp'n"), ECF No. 80.[4]

## LEGAL STANDARDS

Under Rule 15(a), leave to amend should generally be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This is particularly true where, as here, the district court has granted a defendant's motion to dismiss. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). A court's refusal to grant leave to amend must be based on a valid ground, such as where there is "evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

A court may deny leave "in cases of futility of amendment," *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023), meaning that the proposed amended complaint "fails to cure prior deficiencies . . . [and] does not contain enough factual allegations, accepted as true, to state a claim for relief that is plausible on its face." *Dobryakov v. Brickhouse Food LLC*, No. 22 Civ. 1390, 2024 WL 218441, at *3 (S.D.N.Y. Jan. 19, 2024). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Because futility is governed by the same standard as a Rule 12(b)(6)

---

[4] Plaintiffs and the Moving Defendants both filed letters discussing supplemental authority for the Court's consideration. *See* ECF Nos. 81, 82. These letters concerned the pleading standard for one of Plaintiffs' claims—that is, whether Plaintiffs' claims under Section 11 of the Securities Act should be evaluated under Rule 8(a)'s notice pleading standard or Rule 9(b)'s particularity standard. *See id.* Because Plaintiff's Section 11 claim fails under either standard, the Court again reserves judgment on which standard applies to that claim, as it did in the dismissal order.

motion to dismiss, *see Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002), for a court to find an amendment is *not* futile, the claim must be facially plausible and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "[T]he party opposing amendment has the burden of establishing that amendment would be futile or otherwise inappropriate."[5] *Ithaca Capital Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 377 (S.D.N.Y. 2020).

**DISCUSSION**

The Court granted dismissal of the FAC because, *inter alia*, it found that Plaintiffs failed to state a claim under either the Securities Act or the Exchange Act. *See* Op. at 8. Section 11 of the Securities Act, under which Plaintiffs seeks to bring one of their claims,[6] prohibits untrue statements of material fact or omissions of material fact in any part of the registration statement filed with the SEC. *See* 15 U.S.C. § 77k. Claims under Section 11 of the Securities Act require a plaintiff to show, among other elements, that a company's "registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Morgan Stanley Inf. Fund Secs. Litig.*, 592 F.3d 347, 358-359 (2d Cir. 2010). Section 10(b) of the Exchange Act, the other statute

---

[5] Because the Moving Defendants only oppose the PSAC on futility grounds, the Court does not consider other reasons, if any, for denying Plaintiffs' Motion.

[6] Plaintiffs also bring a claim under Section 15 of the Securities Act. "Section 15 [of the Securities Act] imposes joint and several liability on 'every person who, by or through stock ownership, agency, or otherwise[,] controls any person liable under' § 11." *In re Lehman Bros. Mortgage-Backed Secs. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (quoting 15 U.S.C. § 77o(a)). Claims under Section 15 require a plaintiff show "a primary violation of § 11 and control of the primary violator by defendants." *Id.*

under which Plaintiffs seeks to bring a claim,[7] makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations." "To state a claim under [Section 10(b) of the Exchange Act], a plaintiff must plead six familiar elements," including "a misstatement or omission of material fact." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021). Under both the Securities Act and the Exchange Act, then, a Plaintiff must identify a material misstatement or omission.

The Court dismissed the FAC because it did not contain any such material misstatement or omission. As explained *supra*, Plaintiffs argued that, given *Perfect Diary* and *Little Ondine*'s importance as Yatsen's flagship brands, it was misleading to characterize them as "healthy, "fast-growing," and "steady" given that their sales on Tmall and Taobao were declining. The Court rejected this argument for several reasons, including because the FAC "d[id] not offer any allegations regarding the proportion of Yatsen's sales made on Taobao," "acknowledge[d] that Yatsen sold its products through channels beyond Tmall and Taobao," "d[id] not allege what proportion (even roughly) of [Yatsen's net revenues] came from Tmall and Taoboa," and "suggest[ed] that the portion of Yatsen's revenues attributable to DTC channels, including Tmall and Taobao specifically, was in flux during the relevant period." Op. at 10-11. "In short, even accepting the FAC's allegations as true," the Court stated that it was "unclear how sales on Tmall and Taobao relate[d] to Yatsen's overall health and outlook," meaning that Plaintiffs could not use sales data from Tmall or Taobao to impeach Yatsen's characterizations of *Perfect Diary* and *Little*

---

[7] Plaintiffs also bring a claim under Section 20(a) of the Exchange Act, which imposes liability for any individuals or entities that control any person liable under Section 10(a) of the Exchange Act. *See* 15 U.S.C. § 78t(a). A Section 20(a) claim is predicated on a viable Section 10(b) claim. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 n.3. (2d Cir. 2021).

*Ondine* as "healthy, "fast-growing," and "steady." Op. at 11-12. The Court also noted that "Yatsen's disclosures—which Plaintiffs incorporate[d] by reference into the FAC—indicate[d] that revenues for [*Perfect Diary* and *Little Ondine*] increased, lending support" to Yatsen's positive characterizations of the brands. *Id.* at 12.

In the PSAC, Plaintiffs purport to cure these deficiencies by including "enhanced allegations about the quantity and importance of sales of *Perfect Diary* on Tmall and Taobao." Pls.' Mot. at 3.[8] They argue that "[t]he allegations in the [PSAC] about the importance of sales of *Perfect Diary* on Tmall and Taobao to Yatsen at the time of the IPO — that those sales comprised about half of Yatsen's total revenue in the period leading up to the IPO and, as Yatsen itself acknowledged in its Offering Documents, were the single biggest sales channels for the Company's most important product — and the fact that sales of *Perfect Diary* on Tmall and Taobao had stalled and were in fact declining at the time of the IPO, establish that Yatsen's statements about perfect Diary's brand health were false and misleading . . . ." *Id.* at 4. To substantiate this argument, Plaintiffs provide various new data in the PSAC, such as *Perfect Diary*'s monthly and year-over-year sales volume and sales revenue on Tmall and Taobao from January 2020 through October 2020, *see* PSAC ¶¶ 49-70, ECF No. 78-1, and the percentage of *Perfect Diary* sales comprising Yatsen's overall revenue in the first three quarters of 2020, *see id.* ¶¶ 44-46.

The new data offered by Plaintiffs provide some additional context about the significance of *Perfect Diary* sales on Tmall and Taobao at the time of the IPO. But the PSAC does not adequately cure the deficiencies identified in the Court's dismissal order. Plaintiffs' proposed amendments are futile because it is possible for *Perfect Diary* to be Yatsen's most important brand,

---

[8] Plaintiffs' PSAC "narrows [their] claims regarding *Little Ondine* to only Exchange Act claims based on post-IPO statements." Pls.' Mot. at 3 n.3.

7

for about half of Yatsen's revenue to come from *Perfect Diary*'s sales on Tmall and Taobao, for Tmall and Taobao to be the biggest sales channels for *Perfect Diary*, and for *Perfect Diary*'s sales on Tmall and Taobao to stall and/or decline in the relevant period—while at the same time for *Perfect Diary* to be described as "healthy," "fast-growing," and "steady."  Indeed, as the Court acknowledged in the dismissal order, as Moving Defendants note in their Opposition, and as Plaintiffs admit in their Motion, "*Perfect Diary*['s] net revenues increased year-over-year from the first nine months of 2019 to the first nine months of 2020."  Pls.' Mot. at 5 (emphasis added); *see also* Op. at 12 ("Yatsen's disclosures—which Plaintiffs incorporate by reference into the FAC—indicate that revenues for [*Perfect Diary* and *Little Ondine*] increased, lending support to the[] characterizations" of the brands "as 'healthy,' 'fast-growing,' and 'steady.' . . ."); Opp'n at 4-5 ("That *Perfect Diary*'s net revenue increased at the same time its sales on Tmall and Taobao allegedly declined undermines Plaintiffs' conclusory assertion that the Tmall/Taobao decline represented 'a clear threat' to Yatsen.").  "Yatsen reported year-over-year revenue growth for nearly a year after the IPO," too, further cutting against Plaintiffs' argument that *Perfect Diary*'s declining sales on Tmall and Taobao needed to be disclosed as to make the company's characterization of the brand not misleading.  Opp'n at 5.  Ultimately, Plaintiffs' argument here is functionally the same argument as the one they presented in defense of the FAC, which the Court rejected even accepting the allegations as true for the purpose of adjudicating that motion. Providing additional support for an argument that has already been rejected does not make for a successful motion to amend.  *See McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 610 (2d Cir. 2024).

In sum, the PSAC, like the FAC, fails to identify that Yatsen's characterizations of *Perfect Diary* constituted a material misstatement giving rise to Securities Act or Exchange Act liability. The PSAC and the documents it incorporates once again fail to negate the reasonable inference

"that the portion of Yatsen's revenue attributable to DTC channels, including Tmall and Taobao, was in flux during the relevant period." Op. at 11. And it is not clear to the Court that, based on the facts alleged in this case, describing *Perfect Diary* as "healthy," "fast-growing," and "steady" was misleading given the brand and its parent company's increasing revenues. Even if it would have been *helpful* for an investor to know that *Perfect Diary*'s sales on Tmall and Taobao were declining, "in general[,] there is no *duty* to disclose a fact . . . merely because a reasonable investor would very much like to know that fact." *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) (emphasis added). For these reasons, Plaintiffs' amendments in the PSAC pertaining to *Perfect Diary*'s sales on Tmall and Taobao are futile.

For similar reasons, the PSAC also fails to demonstrate that Yatsen had a duty to disclose its Tmall and Taobao sales figures specifically. "[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *Dalberth v. Xerox Corp.*, 766 F.3d 172, 183 (2d Cir. 2014). This duty may arise "when . . . a statute or regulation requires disclosure, or a statement is made that would be inaccurate, incomplete, or misleading without further context." *In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021). Previously, in the dismissal order, the Court held that because the FAC failed to connect *Perfect Diary*'s performance on Tmall and Taobao to Yatsen's financial health, Plaintiffs did not establish that Yatsen's disclosures were inaccurate or incomplete without additional information. *See* Op at 13. Here, the same issues remain.

At the outset, the Court notes that the PSAC fails to cure a deficiency outlined in the dismissal order—neither pleading "offer[s] any allegations regarding the proportion of Yatsen's sales made on Taobao." Op. at 10-11. Moreover, and as explained above, Yatsen was not required to disclose *Perfect Diary*'s sales figures on Tmall and Taobao because sales on these platforms was "in flux during the relevant period," *id.* at 11, a finding the Court made after evaluating the

9

FAC and makes again after reviewing the PSAC. And it can be reasonably inferred that the decline in *Perfect Diary* sales on Tmall and Taobao was offset by sales made on other DTC platforms on which Yatsen sold products in its portfolio, "which accounted for Yatsen's continued revenue growth from sales of Perfect Diary leading up to and following the IPO," Opp'n at 4, and which means that Tmall and Taobao, while undoubtedly important DTC platforms for Yatsen, need not be singled out specifically for the disclosure of sales information. At base, the allegations in the PSAC, like those in the FAC, fail to "adequately connect Tmall and Taobao sales to Yatsen's overall performance," meaning the PSAC does not substantiate Plaintiffs' claim that Yatsen was duty bound to disclose its sales on those DTC platforms specifically.

Plaintiffs' continued failure to allege a material misstatement or omission is also fatal to the PSAC's claim that Yatsen was obligated to disclose its sales figures with respect to Tmall and Taobao under Items 105 and 303 of SEC Regulations S-K. Item 105 imposes an obligation, "where appropriate," to "provide ... a discussion of the material factors that make an investment in the registrant or offering speculative or risky," including an explanation of "how each risk affects the registrant or the securities being offered." 17 C.F.R. § 229.105. Item 303 requires companies to disclose "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable and unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Both claims under Items 303 and 105 require a showing of a material impact or effect.

Plaintiffs' PSAC adds support for their claim under Item 105, alleging that "Defendants were aware, but did not disclose, that sales in Yatsen's core brand had stalled and/or were declining" which would "have a material adverse effect on Yatsen's future performance." PSAC ¶ 99. Plaintiffs make no amendments or additions to their Item 303 claim. For the reasons explained above, the PSAC fails to sufficiently connect *Perfect Diary*'s sales on Tmall and Taobao

10

to Yatsen's overall financial health, thus does not sufficiently plead a material impact or effect. This is fatal to Plaintiffs' claim that Yatsen had a duty to disclose the negative trends.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Amend is **DENIED**, and this case is dismissed without prejudice.[9] The Clerk of Court is respectfully directed to terminate ECF No. 78 and to terminate this case.

SO ORDERED.

Dated: July 11, 2025
       New York, New York

                                                DALE E. HO
                                    United States District Judge

---

[9] The Court's holding renders the service of process issue identified in the dismissal order and addressed in Plaintiffs' Motion moot.